## Edward KOLLAR v. Stella MARTIN

[706 A.2d 945]

No. 96-253

December 9, 1997. Defendant Stella Martin appeals from a superior court order that held Martin liable to plaintiff Edward Kollar for intentionally interfering with Kollar's contract to sell real estate to third-party Martin Feldman. Martin argues that neither her threat to sue Feldman nor her refusal to sign a release waiving all rights to sue Feldman was wrongful or improper conduct that supports a claim for intentional interference with contractual relations. We agree and reverse.

In February 1993, Martin and Kollar entered into a purchase and sale agreement in which Martin agreed to purchase from Kollar a house and barn on South Main Street in the Village of Stowe for $115,000. The agreement was contingent on Martin being able to obtain financing for the purchase. Martin had difficulty obtaining financing, and the parties extended the agreement to allow Martin additional time to meet this contingency. The extension provided that "[i]f the financing has not been completed by August 20, 1993, the Seller shall have the right to show the property for sale to potential customers."

Martin planned to develop the property into a four- or five-unit retail office complex. She became a tenant on the property in June 1993, but was unable to obtain financing, and her agreement with Kollar expired. Martin then spoke with Feldman, indicating that she was still interested in purchasing the property and explaining her plan to develop the property. Martin asked Feldman if he wanted to become her partner, but Feldman told her he was not interested in a partnership with her. Martin then went to a bank to inquire about obtaining a loan to purchase

the property. Kollar was unaware of Martin's continued efforts to secure financing or her discussions with Feldman.

On November 2, 1993, Kollar accepted an offer from Feldman and John Lupien, Jr. to purchase the property for $116,000. The agreement was contingent on purchasers' review of all leases, and Kollar was required to convey the property free and clear of any lease that was not approved by purchasers. The agreement also provided, "In the event Seller conveys property free and clear of tenants, said tenants will not have any rights of action against purchasers." Feldman visited the property on November 13, 1993, while Martin was still a tenant, and Martin told Feldman that she intended to sue him and the real estate agency if he went through with the purchase. Kollar's attorney then sent Martin a letter telling Martin that her threat to sue Feldman was the only obstacle to closing the sale and asking Martin to sign a release. Martin refused. Consequently, the agreement between Kollar and Feldman/Lupien was terminated. Kollar eventually sold the property in 1995 for $106,000.

Prior to selling the property, Kollar filed a collection suit against Martin for three months' rent, unpaid utility bills and the final $250 payment Martin was to have paid Kollar for the extension of the purchase and sale agreement. Martin filed a counterclaim and a third-party complaint against the real estate agency, two real estate agents and Feldman for intentional interference with prospective contractual relations. Kollar then moved to amend his original complaint by adding a second claim alleging that Martin had interfered with his contract with Feldman. All the claims except Kollar's claim against Martin for interfering with the Kollar-Feldman/Lupien agreement were resolved by consent to judgment or dismissals pursuant to stipulation.

Following a trial before the court, the court concluded that Martin had intentionally and improperly interfered with the agreement between Kollar and Feldman/Lupien. Judgment was entered for Kollar in the amount of $23,331.74, the total for a $10,000 loss in profit for the sale of the property and $13,331.74 in expenses arising from the continued ownership of the property. Martin appeals.

"[T]o be liable for interference with a contractual relationship, the defendant must have intentionally and *improperly* induced or caused [a third party] not to perform under [his] contract with the plaintiff." *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 80, 484 A.2d 911, 913 (1984) (emphasis added). The right protected is the right to be secure in one's business relations. *Mitchell v. Aldrich*, 122 Vt. 19, 23, 163 A.2d 833, 836 (1960). Not every act that disturbs a contract is actionable, however. *Blake v. Levy*, 464 A.2d 52, 54 (Conn. 1983). The act of interference must be wrongful or improper, see *Williams*, 145 Vt. at 80, 484 A.2d at 913, by some measure beyond the fact of interference itself. *Blake*, 464 A.2d at 55.

The Restatement (Second) of Torts indicates that there is a conflict in authority on whether the plaintiff has the burden of proving that the defendant's interference with the contract was improper or whether the defendant must allege justification as an affirmative defense. Restatement (Second) of Torts, ch. 37, introductory note, at 6 (1979); see also *Blake*, 464 A.2d at 55 (although some courts place burden on defendant to plead and prove justification or privilege, better approach requires plaintiff to plead and prove improper motive or means). In the instant case, the parties dispute who has this burden, an issue we need not address here in view of our rule in *Jacobsen v. Garzo*, 149 Vt. 205, 542 A.2d 265 (1988).

Although we have not previously considered whether the threat of lawsuit may be an improper action, in *Jacobsen* we held, "as a matter of law, the filing of a

lawsuit alone cannot constitute tortious interference with contractual relations. *Id.* at 209, 542 A.2d at 268. "[F]ree access to the courts is an essential right recognized by our state constitution." *Id.*; see Vt. Const. ch. I, art. 4 (remedy at law secured to all). Thus, we have limited the remedy for serious abuses of this right to two carefully restricted torts: abuse of process and malicious prosecution. *Jacobsen,* 149 Vt. at 209, 542 A.2d at 268. Having reached this "well-reasoned balance" between the right to access the courts and a remedy for serious abuses of this right, *id.*, we will not permit litigants to circumvent the balance by allowing an action brought under a different label. In *Jacobsen,* we concluded that defendant Garzo's prior act of filing a lawsuit was not itself improper as a matter of law, and thus, did not establish a claim for interference with contractual relations even though the litigation had ended unfavorably to him. *Id.*

We hold in this case that the threat of filing a lawsuit is similarly protected by our constitutional right to access the courts. Plaintiff has indicated no reason that the rule in *Jacobsen* should not apply to a threat to file a lawsuit, nor can we conceive of one. Moreover, the Restatement does not distinguish between filing a lawsuit and threatening to file a lawsuit. See Restatement (Second) of Torts § 767 cmt. c, at 31 (instituting litigation or *threatening* to institute litigation must be done in bad faith to support claim for contract interference); *id.* § 773 illus. 1 (good faith *threat* to bring legal proceeding is not improper).

There is no dispute that Martin's actions caused Kollar's contract with Feldman/Lupien to fail, nor that Martin knew that her actions would have this effect. Thus, the sole issue on appeal is whether Martin's actions — either the threat to sue or the refusal to sign the release — were improper or wrongful. Having extended the rule of *Jacobsen* to include threats of lawsuits, we conclude that Martin's threat to file a lawsuit against Feldman cannot alone constitute tortious interference with contractual relations. Further, Martin had no obligation to sign the release waiving her constitutional right to access the courts; thus, this conduct was in no way improper of wrongful.

*Reversed.*