**HOWARD OPERA HOUSE ASSOCIATES and O'Neill, Crawford & Green, P.C., Plaintiffs,**

v.

**URBAN OUTFITTERS, INC., Defendant.**

**No. 2:99–CV–140.**

United States District Court, D. Vermont.

Aug. 16, 2001.

R. Jeffrey Behm, Sheehey, Furlong, Rendall & Behm, for Howard Opera House Associates.

Peter B. Joslin, Barbara Ruth Blackman, Theriault & Joslin, Montpelier, VT, Geoffrey W. Crawford, O'Neill, Crawford & Green, Burlington, VT, for O'Neill, Crawford & Green, P.C.

Marc Burns Heath, Downs, Rachlin & Martin, P.C., Burlington, VT, for Urban Outfitters, Inc.

Eugene M. Bergman, City Attorney's Office, Burlington, VT, for City of Burlington, VT.

## OPINION AND ORDER

SESSIONS, District Judge.

*"All discord [is but] harmony not understood [.]"*

—Alexander Pope, Essay on Man

In this landlord tenant dispute, the parties have moved for summary judgment on some or all of their claims and counterclaims. For the reasons that follow, the motions are granted in part and denied in part.

### I. *Background*

Landlord Howard Opera House Associates ("HOHA") and a tenant, the law firm of O'Neill, Crawford & Green, P.C. ("OC & G"), have sued tenant Urban Outfitters, Inc. ("Urban Outfitters") for nuisance, breach of contract, fraudulent concealment, constructive fraud, negligent failure to disclose, and breach of an implied covenant of good faith and fair dealing. They seek compensatory and punitive damages and injunctive relief. HOHA also seeks termination of the lease between itself and Urban Outfitters. Urban Outfitters has counterclaimed against HOHA for breach of contract, fraudulent misrepresentation, fraudulent nondisclosure, negligent misrepresentation, and breach of an implied covenant of good faith and fair dealing. It has counterclaimed against OC & G for abuse of process and tortious interference with contract. The parties' discord has sprung from their differing perceptions of the style and decibel level of the music Urban Outfitters plays in its retail store.

Before the Court are four separate motions for summary judgment: one filed by Urban Outfitters, one by OC & G and two by HOHA. Urban Outfitters seeks dismissal of counts II through X of Plaintiffs' First Amended Complaint. HOHA and OC & G seek dismissal of Urban Outfitters' Amended Counterclaims, or in the alternative, to preclude the testimony of Urban Outfitters' damages expert Dr. Gene Laber on *Daubert* grounds. HOHA also seeks summary judgment on Urban Outfitters' counterclaims for recovery of lost sales, lost profits, lost income and punitive damages.

HOHA is a Vermont limited partnership that owns an approximately one hundred year old building known as the Howard Opera House in Burlington, Vermont. The partnership consists of two general partners, Nordahl Brue and Michael Dressell, and two limited partners, Steven Schonberg and John Wadhams. OC & G is a law firm that leases second floor offices in the Howard Opera House. Urban Outfitters is a publicly-traded company that operates retail stores under the names "Urban Outfitters" and "Anthropologie."

According to Urban Outfitters' Annual Report 2000, the Urban Outfitters retail stores offer "lifestyle merchandise" to 18 to 30 year old customers. A critical element of Urban Outfitters' marketing strategy is playing music calculated to appeal to this target market at a volume approaching 85 decibels, also calculated to appeal to this market.

In 1997 Urban Outfitters decided to open a store in Burlington, Vermont. Through its real estate broker it contacted HOHA through HOHA's real estate broker regarding leasing first floor space at the Howard Opera House. HOHA's broker provided information to Urban Outfitters about the Howard Opera House, and expressed his opinion that the space "probably fits extremely well with your demographic profile."

For several months HOHA and Urban Outfitters engaged in extensive negotiations regarding the terms of the lease. HOHA and Urban Outfitters dispute whether HOHA had full knowledge of the manner in which Urban Outfitters operates its stores. Urban Outfitters points out that HOHA conducted an investigation of Urban Outfitters before entering into the lease, including visits to Urban Outfitters stores and discussions with individuals familiar with the stores. HOHA's principals and its agents expressed familiarity with the store's concept at various times during the negotiations, although the volume level of the music played was not specifically mentioned. HOHA stresses that it did not know nor did Urban Outfitters inform it that an essential aspect of Urban Outfitters' business was to play music at levels approaching 85 decibels. Although Urban Outfitters' practice is to attempt to negotiate away any restrictions on its ability to play music, in its negotiations with HOHA the issue never arose.

HOHA informed Urban Outfitters that the building had been substantially renovated. Urban Outfitters inspected the premises before entering into the lease. It contends that the building's appearance and the fact that it had been renovated contributed to its belief that the premises would be acoustically adequate. Urban Outfitters did not undertake an assessment of the underlying solidity of the structure or its acoustics, assertedly relying on HOHA's assurances of suitability.

On October 27, 1998, Urban Outfitters and HOHA executed a ten-year lease, with a five-year renewal option, for 6,904 square feet of ground floor space in the Howard Opera House. The terms of the lease require Urban Outfitters to operate an Urban Outfitters store in the premises. The lease does not contain any noise restrictions, although it does require Urban Outfitters to conduct its business in compliance with all laws. The City of Burlington has a noise ordinance.

At the time it signed the lease, Urban Outfitters had opened more than thirty stores. During its years of operation, Urban Outfitters received noise complaints at three of its stores. It took remedial action in those three instances, and resolved the complaints without litigation. One of the complaints involved tenants above a store which was located in a one hundred year old building with a tin ceiling.

Under the terms of the lease, HOHA was responsible for several demolition and construction projects, including stripping the interior back to the structure, saving only the existing tin ceiling, which covered approximately 35% of the premises. The remainder of the ceiling was to be removed to expose the floor joists for the second story. HOHA completed the required work, and Urban Outfitters took possession of the premises on January 15, 1999.

Urban Outfitters submitted its architect's plans for the store's design for HOHA's approval as required by the lease. The plans showed the design and placement of Urban Outfitters' stereo speakers. HOHA's ability to require modifications to the plans, however, was limited to work which affected the building's structure, or its mechanical, electrical or plumbing systems.[1]

1. Article III, § 2 of the lease provides, in pertinent part:

Tenant shall prepare and submit to Landlord, for approval, ... preliminary plans and specifications covering those aspects of Tenant's Work which affect the Building structure and/or any Building mechanical, electrical and/or plumbing systems. If Landlord notifies Tenant of any objections to the plans and specifications concerning Tenant's work which affects the Building structure or the mechanical, electrical and

In February 1999 HOHA and Urban Outfitters met to discuss construction noise and the potential for construction dust to migrate to other tenants' premises. Urban Outfitters' construction supervisor voiced concern to HOHA at that meeting that if there were cracks that permitted dust to migrate into the second floor offices, then sound might migrate as well.

During construction, Urban Outfitters left the original tin ceiling in place and, where none existed, installed additional sections of tin ceiling beneath two layers of gypsum wallboard. Urban Outfitters mounted its stereo system speakers directly in contact with the tin ceiling. It did not install any soundproofing or employ any other sound mitigation measures.

Urban Outfitters had substantially completed its construction work by the beginning of April, 1999. On April 2, 1999 the sound system was turned on. During the construction period there were complaints about construction noise; after the sound system was turned on OC & G began to complain about the volume level of Urban Outfitters' music.

Urban Outfitters attempted to remedy the problem by working with HOHA and OC & G to find an acceptable volume level and agreeing to avoid music with heavy bass during regular work hours. It adjusted the volume control to ensure that the volume would not be increased beyond the level it believed was acceptable to OC & G. Nevertheless, OC & G continued to complain about the music. HOHA's attorney sent Urban Outfitters a copy of the Burlington Noise Control Ordinance. During the month of April, HOHA requested Urban Outfitters to turn down the volume of its music on several occasions.

On April 13, 1999, Urban Outfitters' Burlington store opened for business. OC & G complained about Urban Outfitters' music to HOHA, to Urban Outfitters and to the Burlington Police Department several times, resulting in at least one police visit to the store. The parties dispute whether OC & G ever threatened to sue HOHA over Urban Outfitters' music habits.

On April 28, 1999, one of OC & G's partners, Jerome O'Neill, telephoned the police and lodged another noise complaint. O'Neill is the Chair of the Burlington City Police Commission. He has stated that he asked the responding officer to handle the noise complaint just as he would a complaint from any other source. On this occasion the police issued a noise citation to Urban Outfitters. Also on April 28, HOHA's attorneys wrote to Urban Outfitters informing it that its music was disturbing other tenants and stating

> [I]f HOHA receives one more complaint from one of its tenants that the sound level coming from the Premises is audible through such tenants [sic] walls, floors or ceilings, then HOHA will be forced to take any and all legal action necessary to ensure compliance with the noise control ordinance of the City of Burlington, including without limitation bringing suit for temporary and permanent injunctive relief and money damages.

Crow Letter at 2 (Doc. 161, Ex. 20).

On April 29, 1999, Urban Outfitters responded to HOHA advising it that HOHA had breached the lease in several respects, that it was therefore in default of the lease, and that Urban Outfitters would hold HOHA liable for all damages resulting from the breaches. Bodzy Letter

---

plumbing systems, Tenant shall make the necessary revisions to said plans and specifications to Landlord's reasonable satisfaction and promptly resubmit the same to Landlord.

Lease Agreement, Art. III, § 2 at 5.

(Doc. 161, Ex. 21). On May 4, 1999 HOHA sent Urban Outfitters a "Notice of Default." The following day HOHA and OC & G filed suit against Urban Outfitters.

## II. *Discussion*

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). A fact is material when it affects the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A moving party is entitled to summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the "court must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party." *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). "Uncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broadcasting Cos.,* 892 F.2d 1128, 1132 (2d Cir.1989).

### B. *Fraudulent and Negligent Misrepresentation*

■ Urban Outfitters claims that HOHA, through its principals and its agents, falsely represented that the Howard Opera House was ideally suited to house an Urban Outfitters store.

■ Fraudulent misrepresentation involves "an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to [its] damage." *Silva v. Stevens,* 156 Vt. 94, 102, 589 A.2d 852, 857 (1991) (quoting *Union Bank v. Jones,* 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980)).[2] Statements of opinion normally cannot form the basis for a fraud action, but are actionable if made as part of a scheme to defraud. *Proctor Trust Co. v. Upper Valley Press, Inc.,* 137 Vt. 346, 350–51, 405 A.2d 1221, 1224 (1979). Usually, "the question as to whether a particular statement is one of fact or opinion is for the jury," but if a statement is "so plainly of the one class or the other ... [it] can be disposed of by the court without the aid of the jury." *Batchelder v. Birchard Motors, Inc.,* 120 Vt. 429, 433, 144 A.2d 298, 300 (1958).

■ Factors which enter into a determination of whether a statement is an expression of opinion or an assertion of fact include: " 'the character and relation of the parties, their respective intelligence, [and] the subject matter of the bargain[;] ... [s]tatements of quantity, quality and value are usually held to be expressions of opinion and therefore not actionable.' " *Id.* (quoting *Belka v. Allen,* 82 Vt. 456, 462, 74 A. 91, 93 (1909)). A statement

---

**2.** Vermont law governs the substantive issues in this diversity case. *See Vermont Plastics,* *Inc. v. Brine, Inc.,* 79 F.3d 272, 277 (2d Cir. 1996).

that a property is ideally suited for another's purposes, made in an arm's length transaction between two sophisticated and experienced business entities, is a classic expression of opinion. *See id.* (statement concerning new car's gas mileage to experienced mechanical engineer purchaser was one of opinion, not of fact, justifying directed verdict). *See also* Restatement (Second) of Torts § 538A (1977) (expression of judgment as to quality, value, authenticity, or other matters of judgment is representation of opinion).

■ A party claiming fraud must have "justifiably relied" on the misrepresentation. *See Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 445, 586 A.2d 1115, 1120 (1990). *See also Proctor Trust,* 137 Vt. at 351, 405 A.2d at 1224–25; Restatement (Second) of Torts § 525. According to the Restatement, the recipient of a fraudulent misrepresentation of opinion

> is not justified in relying upon it in a transaction with the maker, unless the fact to which the opinion relates is material, and the maker (a) purports to have special knowledge of the matter that the recipient does not have, or (b) stands in a fiduciary or other similar relation of trust and confidence to the recipient, or (c) has successfully endeavored to secure the confidence of the recipient, or (d) has some other special reason to expect that the recipient will rely on his opinion.

Restatement (Second) of Torts § 542.

Urban Outfitters has not alleged that HOHA claimed to have special knowledge, or that HOHA stood in a relationship of trust and confidence with it, or that HOHA secured its confidence, or that HOHA had any other special reason to expect that Urban Outfitters would rely on its opinion. Urban Outfitters is a national merchandiser with a well-defined business mission and strategy, and extensive experience with leasing space in mixed-use buildings.

Urban Outfitters has produced no evidence from which a rational trier of fact could conclude that it justifiably relied on a general statement of opinion from HOHA that the Howard Opera House would be an ideal location for an Urban Outfitters store. HOHA is entitled to summary judgment on Urban Outfitters' fraudulent misrepresentation claim.

■ A claim of negligent misrepresentation may be made "against one who, in the course of his business, profession or employment supplies false information for the guidance of others in their business transactions[,] ... where there is justifiable reliance on the information provided ..., and where that reliance results in pecuniary loss." *McGee v. Vt. Fed. Bank, FSB,* 169 Vt. 529, ——, 726 A.2d 42, 44 (1999) (citing *Limoge v. People's Trust Co.,* 168 Vt. 265, 269, 719 A.2d 888, 890 (1998); Restatement (Second) of Torts § 552(1) (1977)). A party claiming negligent misrepresentation " 'may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the [claimant].' " *McGee,* 169 Vt. at ——, 726 A.2d at 44–45 (quoting *Silva,* 156 Vt. at 108, 589 A.2d at 860). In the negligent misrepresentation context, a claimant's own negligence will bar recovery. *See id.*

Urban Outfitters has not alleged that it was incapable of inquiring directly of HOHA whether playing music at levels approaching 85 decibels would present a problem for other tenants in the building, nor has it produced evidence from which a rational trier of fact could conclude that it was incapable of conducting its own investigation into the matter. As a consequence, its negligent misrepresentation claim must fail.

Because Urban Outfitters cannot prove that it justifiably relied on HOHA's state-

ments, HOHA is entitled to summary judgment on Counts I and III of Defendant's Amended Counterclaims.

### C. Fraudulent Concealment/Nondisclosure

Under Vermont law, "[l]iability for fraud may be premised on the failure to disclose material facts as well as on an affirmative misrepresentation." *Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 444, 586 A.2d 1115, 1120 (1990). Where there is a duty to disclose, "the failure to disclose [ ] material fact[s] coupled with an intention to mislead or defraud rises to the level of material misrepresentation." *Id.* (quoting *White v. Pepin*, 151 Vt. 413, 416, 561 A.2d 94, 96 (1989)).

A duty to disclose may arise out of superior knowledge or means of knowledge. *See Silva v. Stevens*, 156 Vt. 94, 103, 589 A.2d 852, 857 (1991). Where material facts are accessible to one party only, and that party " 'knows them not to be within the reach of the diligent attention, observation and judgment' " of the other party, that party has a duty to disclose such facts. *Id.*, 156 Vt. at 103, 589 A.2d at 857–58 (quoting *Cushman v. Kirby*, 148 Vt. 571, 576, 536 A.2d 550, 553 (1987)).

HOHA claims that Urban Outfitters was under a duty to disclose because it had superior knowledge about the importance of playing music at a certain volume in its stores, and that its music was likely to cause a problem at the Howard Opera House. While this may be true, this alone does not give rise to a duty to disclose. HOHA must also be able to convince a rational trier of fact that the volume level of the music played at Urban Outfitters stores is a matter that HOHA could not discover through diligent attention, observation and judgment. The manner in which Urban Outfitters plays music in its stores is no secret; it is open, obvious, and not information accessible to Urban Outfitters alone. Urban Outfitters was under no duty to disclose the obvious; consequently it is entitled to summary judgment on Count VII of the Plaintiffs' First Amended Complaint.

Urban Outfitters claims that HOHA was under a duty to disclose because it had superior knowledge about the acoustical properties of the Howard Opera House and the sensibilities of the other tenants. Again, while this may be true, this alone does not give rise to a duty to disclose. Urban Outfitters must also be able to convince a rational trier of fact that Urban Outfitters would be unable to discover, through diligent attention, observation and judgment, that the acoustics of the building were such that playing music with heavy bass at levels approaching 85 decibels might disturb a tenant law firm. The building was open to inspection, and Urban Outfitters or its agents conducted more than one before the lease was executed. Urban Outfitters has considerable experience in opening and operating stores in buildings of various ages and quality and with varied tenant mixes. HOHA was under no duty to disclose where the material facts were accessible to Urban Outfitters had they investigated more fully; consequently HOHA is entitled to summary judgment on Count II of Urban Outfitters' Amended Counterclaims.

### D. Constructive Fraud

"Where there is no intent to mislead or defraud, but the other elements of fraud are met, a [party] may be liable for constructive fraud." *Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 444, 586 A.2d 1115, 1120 (1990). Constructive fraud "may be found in cases involving misrepresentations that do not rise to the level of deceit, or actual fraud, and in cases where a party in a position of superior knowledge

or influence intentionally gains an unfair advantage at the expense of another person." *Hardwick–Morrison Co. v. Albertsson*, 158 Vt. 145, 149, 605 A.2d 529, 531 (1992). HOHA's constructive fraud claim is based upon the same allegations as its fraudulent concealment claim, and therefore HOHA must establish that Urban Outfitters was under a duty to disclose. Because HOHA cannot establish a duty to disclose, it has not made out a case of constructive fraud, and Urban Outfitters is entitled to summary judgment on Count VIII of Plaintiffs' First Amended Complaint.

### E. *Negligent Failure to Disclose*

 Under certain circumstances, a party to a business transaction owes a duty to the other party to exercise reasonable care to disclose a matter in question. *See Pearson v. Simmonds Precision Prods., Inc.*, 160 Vt. 168, 170–71, 624 A.2d 1134, 1136 (1993) (citing Restatement (Second) of Torts § 551 (1977)). Here, where there is no fiduciary or other relationship of trust between the parties, and there is no claim that representations regarding the playing of music were made, Urban Outfitters owed a duty to exercise reasonable care to disclose, prior to the consummation of the transaction,

> (b) matters known to [it] that [it knew] to be necessary to prevent [a] partial or ambiguous statement of the facts from being misleading; and ... (e) facts basic to the transaction, if [it knew] that the other [was] about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2)(b), (e). Whether there is a duty to disclose the fact in question is an issue of law for the court to determine. *Id.* cmt. m.

 Urban Outfitters disclosed its belief that it fosters a unique environment in its stores, and it invited HOHA's representatives to have a look for themselves. As to subsection (b), to the extent that "unique environment" could be considered ambiguous, there is no hint under the circumstances that such a statement was potentially misleading. On the contrary, the statement, as well as the Urban Outfitters representatives, suggested further investigation. As to subsection (e), setting aside the question whether Urban Outfitters knew that HOHA was mistaken about how loudly Urban Outfitters played its music, HOHA has not shown that under the circumstances it could reasonably have expected Urban Outfitters to disclose this information. Accordingly, Urban Outfitters is entitled to summary judgment on Count IX of Plaintiffs' First Amended Complaint.

### F. *Abuse of Process*

 A party alleging abuse of process "must plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage." *Jacobsen v. Garzo*, 149 Vt. 205, 208, 542 A.2d 265, 268 (1988). Proper use of legal process is not actionable, even if the user acted with malicious intentions. *See id.*, 149 Vt. at 207, 542 A.2d at 267.

Urban Outfitters contends that OC & G abused its power over the Burlington police to cause a noise citation to issue, then used the citation in its nuisance action against it. Although this allegation survived OC & G's motion to dismiss, *see Howard Opera House Assocs. v. Urban Outfitters, Inc.*, 97 F.Supp.2d 571, 574 (D.Vt.2000), Urban Outfitters has offered insufficient evidence concerning the first element of the tort to withstand OC & G's

motion for summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Rule 56(e) requires that Urban Outfitters "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Although Urban Outfitters has vividly argued OC & G's malevolent intentions, it has not shown that it made an illegal, improper or unauthorized use of court process. Urban Outfitters' "evidence" of abuse of process consists of the following: Jerome O'Neill, OC & G partner and chair of the Burlington City Police Commission, telephoned the police to complain about noise from Urban Outfitters. Although a previous investigation of an OC & G complaint had not resulted in the issuance of a citation, on this occasion a citation did issue. Urban Outfitters believes that it will prove that its music is not unreasonably loud. OC & G's nuisance claim charges that Urban Outfitters is in violation of the City's noise ordinance. Urban Outfitters believes that OC & G procured the noise citation in order to bolster its nuisance claim.

The evidence shows at most that OC & G was determined to get someone from the police department to respond to its noise complaints and issue a citation, and that it intended to attempt to silence Urban Outfitters via municipal prosecution as well as by nuisance suit which referred to the municipal action. There is no evidence, only allegation and innuendo,[3] that there was any impropriety or illegality about the procurement of the noise citation. O'Neill's statement that he told the police to handle the matter as they would any other noise complaint is not rebutted. Urban Outfitters has provided no legal authority for the contention that it is improper to rely on a citation for violation of an ordinance as part of one's nuisance claim. Accordingly, OC & G is entitled to summary judgment on Count VI of Urban Outfitters' Amended Counterclaims.

### G. *Tortious Interference with Contract*

▬▬▬▬ Urban Outfitters has alleged that OC & G's repeated complaints to HOHA about Urban Outfitters' music caused HOHA to declare that Urban Outfitters was in breach of the lease agreement. To establish liability for tortious interference with a contract, Urban Outfitters must show that OC & G "intentionally and improperly induced or caused" HOHA "not to perform under its contract with" Urban Outfitters. *Williams v. Chittenden Trust Co.,* 145 Vt. 76, 80, 484 A.2d 911, 913 (1984). *See also Kollar v. Martin,* 167 Vt. 592, 593, 706 A.2d 945, 946 (1997) (entry order); *Gifford v. Sun Data, Inc.,* 165 Vt. 611, 612, 686 A.2d 472, 473 (1996) (entry order). Because "[n]ot every act that disturbs a contract is actionable, ... the act of interference must be wrongful or improper ... beyond the fact of interference itself." *Kollar,* 167 Vt. at 593, 706 A.2d at 946 (citations omitted).

▬▬▬▬ In determining whether any actions taken were improper, a court considers "the motives and actions of [the actor], the relations of the parties, and their respective interests." *Gifford,* 165 Vt. at 612, 686 A.2d at 474. *See also* Restatement (Second) of Torts § 767 (1979). OC & G complained. It complained vociferously and repeatedly, to its landlord, to the property manager, to Urban Outfitters, to the police. Urban Outfitters may have felt that the noise complaints were unfounded and unreasonable, but it cannot claim that

---

3. For example, Urban Outfitters asserts that OC & G "procured a noise citation" by "[b]ringing the authority of the Police Commissioner to bear," and that it "[abused] its power over the Burlington police to cause a noise citation to issue against Urban Outfitters when no violation had been committed." Opp'n at 4 (Doc. 164).

making noise complaints to the landlord was wrongful or improper in and of itself.

Urban Outfitters also contends that OC & G threatened HOHA with a lawsuit. Assuming, arguendo, that Urban Outfitters could establish this fact, a good faith threat of bringing a lawsuit will not support a claim for tortious interference with contract. *Kollar*, 167 Vt. at 594, 706 A.2d at 947. Urban Outfitters has not demonstrated that any OC & G threat to sue HOHA was done for any purpose other than to obtain some peace and quiet. Again, Urban Outfitters may believe that the degree of peace and quiet that OC & G demands is unreasonable, but to seek to obtain it through threatening a lawsuit does not constitute bad faith. As Urban Outfitters has not demonstrated anything untoward about OC & G's motives and actions or the relations and respective interests of the parties, it has not made a sufficient factual showing of improper action.

Because Urban Outfitters cannot establish the element of improper inducement, OC & G's motion for summary judgment on the tortious interference with contract claim (Count VIII) is granted.

### H. *Breach of Contract*

HOHA has hurled five counts of breach of contract at Urban Outfitters; Urban Outfitters has flung back one breach of contract count alleging seven separate breaches.

#### 1. *HOHA's Breach of Contract Claims*

Urban Outfitters claims that HOHA's breach of contract claims must be dismissed because HOHA failed to provide Urban Outfitters with proper notice of default and an opportunity to cure before bringing suit, as required by the lease. HOHA argues that the lease does not oblige it to provide a thirty-day cure period before filing suit. It also argues that waiting thirty days in this case would have been futile, because Urban Outfitters clearly stated that it did not intend to cure the alleged default.

Article XVI, Section 1 of the lease provides:

> [f]or purposes of this Lease, it shall be deemed a "default" by Tenant . . . if Tenant shall fail in the performance or observance of any . . . agreement or condition on its part to be performed or observed and if Tenant shall fail to cure said failure within thirty (30) days after receipt of notice of said failure from Landlord . . . then . . . Landlord lawfully may, *in addition to any remedies otherwise available to Landlord,* immediately or at any time thereafter, and without further demand or notice, enter into and upon the said Demised Premises . . . and repossess the same . . . and expel Tenant . . . by appropriate dispossess proceedings . . . without prejudice to any remedies which might otherwise be used for . . . preceding breach of covenant and/or Landlord may send written notice to Tenant terminating the term of this Lease[.]

Lease Agreement, Art. XVI, § 1 at 26–27 (emphasis supplied).

The section specifically provides that the remedies of repossession, expulsion or lease termination may only be resorted to after notice of default and a thirty day opportunity to cure. The section acknowledges that the landlord may resort to other remedies, but the placement of the clause referring to other remedies renders it unclear whether the landlord must provide notice and an opportunity to cure before resorting to other remedies.

"A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation." *Isbrandtsen v. North Branch Corp.*, 150

Vt. 575, 577, 556 A.2d 81, 83 (1988). The parties have given two reasonable interpretations of the notice and cure provision as it may affect remedies other than those specified in section 1 of Article XVI: one, that the notice and cure provisions apply only to the remedies of repossession, expulsion and lease termination; the other, that the landlord may only resort to other remedies after the tenant has failed to cure within thirty days.

■■■■ What the parties intended by an ambiguous contractual provision is a question of fact for a jury to decide. *See Villa v. Heilmann,* 162 Vt. 543, 549, 649 A.2d 768, 772–73 (1994). *See also Directors of Seasons on Mount Snow Owners Ass'n v. Seasons Assocs.,* 166 Vt. 618, 620, 693 A.2d 735, 738 (1997). Because reasonable factfinders could differ as to whether the lease requires notice and an opportunity to cure before filing a civil lawsuit, Urban Outfitters has not demonstrated the absence of a genuine dispute of material fact, and summary judgment in its favor on HOHA's breach of contract claims is unwarranted.[4]

2. *Urban Outfitters' Breach of Contract Claims*

■■■ Urban Outfitters alleges that HOHA failed to comply with several provisions of the lease agreement: Article I, Section 2; Exhibit C, ¶ 6, attached to Article III; Article X, Section 1; Article XVII, Sections 2 and 21; and Article XVI, Section 1. In addition it charges that HOHA is in general breach of the lease because it failed to modify the building as necessary for Urban Outfitters' use, specifically by failing to provide adequate sound-proofing.

■■■ Article I, Section 2 obligates HOHA to deliver to Urban Outfitters space that complies

with all laws, rules, regulations, orders, ordinances, and requirements of all federal, state, and municipal government departments, commissions, boards, and officers, and all orders, rules, and regulations of the National Board of Fire Underwriters, the local Board of Fire Underwriters, or any other agency or agencies, body or bodies exercising similar functions that may be applicable . . ., including but not limited to, compliance with all building, fire and electrical codes required for Tenant's contemplated use.

Lease Agreement, Art. I, § 2 at 2. This provision, according to Urban Outfitters, covers HOHA's common law duty to provide suitable commercial premises. The plain language of this provision cannot reasonably be construed to include compliance with common law, assuming that such a duty exists. It clearly covers enactments of local, state and federal bodies or agencies, not the body of law derived from judicial decisions. When the contract language is clear, the understanding of the parties is taken to be what the agreement declares. *See Karlen Communications, Inc. v. Mt. Mansfield Television, Inc.,* 139 Vt. 615, 617, 433 A.2d 290, 292 (1981). *See also Hamelin v. Simpson Paper (Vermont) Co.,* 167 Vt. 17, 19, 702 A.2d 86, 88 (1997). Summary judgment is granted to the extent that Urban Outfitters' breach of contract claim is founded on Article I, Section 2.

---

4. The parties' reciprocal claims that resorting to the notice and cure provisions would have been futile cannot be resolved on summary judgment. The issue of who, if anyone, first refused to perform under the contract depends on the resolution of strongly disputed facts. If an unequivocal refusal to perform can be established, a nonbreaching party may be excused from its performance. *See, e.g., Carvage v. Stowell,* 115 Vt. 187, 192, 55 A.2d 188, 192 (1947).

■ Paragraph 6 of Exhibit C requires HOHA to perform or provide "any additional code necessitated work to provide a retail space that complies with all Laws ...." Lease Agreement, Ex. C. Urban Outfitters has produced no evidence of work, not performed, that would have been required by any code. Accordingly, HOHA is entitled to summary judgment to the extent that Urban Outfitters' breach of contract claim is founded on Exhibit C.

■ Article X, Section 1 obligates HOHA to

> keep in good order, condition and repair, making replacements as necessary, the roof, foundations, structural walls, structural columns, structural beams, floors (as to structural integrity), ... structural portions of the Building ..., except for any damage thereto caused by any negligent act or omission of Tenant ..... Landlord shall not be responsible to make any other improvements or repairs of any kind upon the Demised Premises[.]

Lease Agreement, Art. X, § 1 at 19. The parties dispute whether adequate soundproofing is covered by a requirement to maintain the structural integrity of the building. With material facts in dispute on this point, HOHA is not entitled to summary judgment.

■ Article XVIII, Section 2 grants Urban Outfitters the benefit of a covenant of quiet enjoyment, to "peaceably and quietly have, hold, occupy and enjoy the Demised Premises ... without hindrance or ejection by any persons lawfully claiming under, by or through Landlord." Lease Agreement, Art. XVIII, § 2 at 30. In support of this claim, Urban Outfitters alleges that HOHA and OC & G cooperated and/or colluded to silence Urban Outfitters, thereby depriving it of the enjoyment of its premises. Whether HOHA and OC & G colluded, and whether such activity hindered Urban Outfitters in the enjoyment of its leasehold, are questions of fact for the jury. Summary judgment is denied on this point.

Article XVIII, Section 21 warrants that HOHA knows of "no claims, rights, or other encumbrances" to the premises, other than a series of listed exceptions. Lease Agreement, Art. XVIII, § 21 at 36. Urban Outfitters has produced no evidence of an encumbrance to the premises; summary judgment is granted to the extent that Urban Outfitters' breach of contract claim is founded on Article XVIII, Section 21.

Urban Outfitters alleges that HOHA is in breach of Article XVI, Section 1, the notice and cure provision of the lease. As discussed above, the relevant language of the provision is ambiguous, and will require resolution by the factfinder. Accordingly, summary judgment is denied on this point.

### I. Breach of Implied Covenant of Good Faith and Fair Dealing

■ An implied covenant of good faith and fair dealing is part of every contract; that is, "each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement." *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993). The implied covenant "exists to ensure that parties to a contract act with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Id.* (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). Conduct involving bad faith violates "community standards of decency, fairness or reasonableness." *Southface Condominium Owners Ass'n, Inc. v. Southface Condominium Ass'n, Inc.*, 169 Vt. 243, 246, 733 A.2d 55, 58 (1999) (quoting *Carmichael*, 161 Vt. at 209, 635 A.2d at 1216).

■ Whether a party has acted in "good faith is ordinarily a question of fact, one particularly well-suited for juries to decide." *Carmichael*, 161 Vt. at 209, 635 A.2d at 1217. However, summary judgment will be granted on a claim for breach of the implied covenant of good faith and fair dealing where the nonmoving party cannot show how the other undermined or destroyed its rights under the contract. *See Lauzon v. State Farm Mut. Auto. Ins. Co.*, 164 Vt. 620, 621–22, 674 A.2d 1246, 1247 (1995) (entry order) (affirming grant of summary judgment that dismissed claim of breach of duty of good faith and fair dealing). The factual questions are whether Urban Outfitters on the one hand "adhered to the agreed common purpose of the contract consistent with the justified expectations" of HOHA, and whether HOHA on the other hand did the same. *Southface*, 169 Vt. at 246, 733 A.2d at 58.

HOHA contends that it justifiably expected that Urban Outfitters would supply any equipment and do any work to the premises necessary to ensure that Urban Outfitters could conduct its business lawfully and without antagonizing its neighbors. Urban Outfitters contends that it justifiably expected that HOHA would provide an acoustically adequate building, because HOHA professed to be familiar with the Urban Outfitters concept, and HOHA required the lease to specify that Urban Outfitters would operate an Urban Outfitters store in the leased space. Whether these expectations were justifiable under the circumstances, and whether the parties' conduct violated community standards of fairness and reasonableness must await a jury's determination. Accordingly, summary judgment is denied as to the parties' claims of breach of the implied covenant of good faith and fair dealing.

## J. *Damages*

Urban Outfitters seeks compensatory and punitive damages against HOHA and OC & G, Am. Counterclaims at 17, including claims for lost sales, lost income and lost profits. Urban Outfitters' claims against OC & G have been dismissed. Because the fraud claims against HOHA also do not survive summary judgment, the issue is whether Urban Outfitters may obtain this type of recovery from HOHA on its remaining claims of breach of contract and breach of an implied covenant of good faith and fair dealing.

■ Article XVI of the Lease Agreement provides that neither landlord nor tenant may recover consequential or punitive damages from the other. Lease Agreement, Art. XVI, § 3 at 28. Under Vermont law, lost income or profits are a form of consequential, or special, damages. *See Berlin Dev. Corp. v. Vt. Structural Steel Corp.*, 127 Vt. 367, 370, 250 A.2d 189, 191 (1968). *See also Vineyard Brands, Inc. v. Oak Knoll Cellar*, 155 Vt. 473, 483, 587 A.2d 77, 82 (1990). The lease thus specifically precludes Urban Outfitters' recovery of lost income or profits, as well as punitive damages.

■ Notwithstanding the waiver of consequential damages contained in the lease, Urban Outfitters contends that it is entitled to present evidence of lost profits in order to prove the diminution in value of its leasehold interest resulting from HOHA's actions. Although evidence of lost profits may be a method by which diminution in value may be proven, *see, e.g., Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 758 A.2d 795, 802 (2000) (expectation damages include lost profits),[5]

---

5. *But see Berlin Development Corp.*, 127 Vt. at 372, 250 A.2d at 193 (loss of profits usually too contingent and speculative to prove dimi-

nution in value of use of property) (citing *Matzger v. Arcade Building & Realty Co.*, 102 Wash. 423, 173 P. 47, 49–50 (1918)).

Urban Outfitters has not shown why this fact entitles it to ignore the plain language of the lease provision barring this type of recovery.

Accordingly, HOHA's motion for summary judgment on Urban Outfitters' counterclaims is granted to the extent that the counterclaims seek recovery of punitive or consequential damages, including damages for lost profits, sales or income.[6]

## CONCLUSION

Essentially, this is not a case about fraudulent conduct. This is a case about the interpretation of a lease agreement. For the reasons stated above, HOHA's and OC & G's Motions for Summary Judgment or in the Alternative to Preclude the Testimony of Gene Laber (Docs. 153 and 158) are **Granted in part and Denied in part as moot**. The motions are granted as to the motions for summary judgment and denied as moot as to the motions to preclude. HOHA's Motion for Summary Judgment (Doc. 160) is **Granted in part and Denied in part**. Counts I, II, III, VI and VIII of the Amended Counterclaims (Doc. 28) are dismissed. Urban Outfitters' Motion for Partial Summary Judgment (Doc. 155) is **Granted in part and Denied in part**. Counts VII, VIII and IX of the First Amended Complaint (Doc. 111) are dismissed.

---

**6.** Given this disposition, it is unnecessary to rule on HOHA's claim that Urban Outfitters is precluded from recovery of lost profits for failure to mitigate its damages.