322 F.3d 125
 HOWARD OPERA HOUSE ASSOCIATES and O'Neill, Crawford & Green, P.C., Plaintiffs-Counter-Defendants-Appellees,
and
City of Burlington, VT, Intervenor-Plaintiff-Appellee,
v.
URBAN OUTFITTERS, INC., Defendant-Counter-Claimant-Appellant.
 Docket No. 02-7593.
 United States Court of Appeals, Second Circuit.
 Argued: January 13, 2003.
 Decided: March 5, 2003.
 
 Marc B. Heath, Downs Rachlin Martin PLLC, Burlington, VT (David E. Bond, Downs Rachlin Martin PLLC, Burlington, VT, on brief), for Defendant-Counter-Claimant-Appellant.
 Eric S. Miller, Sheehey Furlong & Behm P.C., Burlington, VT (R. Jeffrey Behm, Sheehey Furlong & Behm P.C., Burlington, VT, on brief), for Plaintiff-Counter-Defendant-Appellee Howard Opera House Associates.
 Eugene M. Bergman, Office of the City Attorney, Burlington, VT, for Intervenor-Plaintiff-Appellee City of Burlington, VT.
 Before: KEARSE and B.D. PARKER, Circuit Judges, and RAKOFF, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant-counter-claimant-appellant Urban Outfitters, Inc. ("Urban Outfitters") appeals from a series of related orders of the district court for the District of Vermont (William K. Sessions III, Judge), culminating in judgment for plaintiffs-counter-defendants-appellees Howard Opera House Associates ("Howard") and O'Neill, Crawford & Green, P.C. For the reasons stated below, we affirm the judgment in most respects but remand for clarification of the injunctive relief ordered by the district court.
 
 
 2
 The pertinent facts are as follows: Urban Outfitters is a retail chain targeting purchasers between the ages of eighteen and twenty-five. In each of its stores, Urban Outfitters plays music that it believes will appeal to those individuals. In 1998, Urban Outfitters and Howard executed a lease (the "Lease") that would enable Urban Outfitters to operate a store on premises owned by Howard for a period of ten years, with an option to renew for five more years. The Lease had no express noise restrictions but, inter alia, required Urban Outfitters to comply "with all applicable Laws." One such law is § 21-13 of the Burlington Code of Ordinances, which provides in relevant part:
 
 
 3
 ... It shall be unlawful for any person to make or cause to be made any loud or unreasonable noise. Noise shall be deemed to be unreasonable when it disturbs, injures or endangers the peace or health of another or when it endangers the health, safety or welfare of the community. Any such noise shall be considered to be a noise disturbance and a public nuisance.
 
 
 4
 Burlington Code of Ordinances § 21-13(b)(1).
 
 
 5
 Urban Outfitters first began playing music in the leased premises on April 2, 1999, almost immediately precipitating complaints from other tenants of the building. When the complaints could not be resolved, Howard and another of its tenants, the law firm of O'Neill, Crawford & Green P.C., brought suit. After that suit was removed to federal court, the district court held a preliminary injunction hearing on May 12, 1999. That same day, with the court's encouragement, the parties entered into an interim stipulation, in which Urban Outfitters agreed to lower the volume setting on its sound system to a specified level during the course of the litigation.
 
 
 6
 Both sides moved for summary judgment, but the district court, in an opinion and order dated August 16, 2001, denied the motions in substantial part. See Howard Opera House Assocs. v. Urban Outfitters, Inc., 166 F.Supp.2d 917, 935 (D.Vt. 2001). Thereafter, although the plaintiffs had withdrawn their request for any but injunctive relief, the court decided to have the case tried as to liability before an advisory jury in November 2001. On November 30, 2001, the jury returned a verdict, finding that Urban Outfitters was liable to Howard and O'Neill, Crawford & Green, P.C. for nuisance, and liable to Howard for breach of contract and breach of the implied covenant of good faith and fair dealing. The jury also found that Howard had itself breached the implied covenant of good faith and fair dealing.
 
 
 7
 On January 24, 2002, the district court adopted most of the jury's findings as its own, but concluded that there was insufficient evidence to support the view that Howard had breached the implied covenant of good faith and fair dealing. See Howard Opera House Assocs. v. Urban Outfitters, Inc., No. 2:99-CV-140, at 1-2 (D.Vt. Jan. 24, 2002). The court also explained that it had considered evidence of past noise complaints against Urban Outfitters in arriving at its judgment. See id. at 24 n. 9.
 
 
 8
 Based on the findings of liability, the district court, on April 17, 2002, issued an injunction ordering that: 1. [Urban Outfitters] and all persons in active concert or participation with it, including its officers, agents, servants, and employees, are enjoined from operating the sound system in the Store in a manner that substantially and unreasonably interferes with other tenants' use of their space in the Howard Opera House.
 
 
 9
 2. [Urban Outfitters] and all persons in active concert or participation with it, including its officers, agents, servants, and employees, are enjoined to comply with the Burlington Noise Control Ordinance by operating the sound system in the Store in a manner that does not unreasonably disturb other tenants of the Howard Opera House.
 
 
 10
 This Order shall remain in effect permanently or until further ordered by this Court.
 
 
 11
 Howard Opera House Assocs. v. Urban Outfitters, Inc., No. 2:99-CV-140, at 4-5 (D. Vt. April 17, 2002).
 
 
 12
 Urban Outfitters presents six arguments on appeal: first, that the district court erred in holding Urban Outfitters liable for breach of the Lease provision that requires compliance with "all applicable Laws," because the Burlington noise ordinance is facially overbroad and unconstitutionally vague; second, that the April 17, 2002 injunction order is impermissibly vague; third, that the district court erred in admitting evidence of past noise complaints against Urban Outfitters; fourth, that the district court's finding of liability for breach of the implied covenant of good faith and fair dealing cannot be sustained absent evidence of such prior noise complaints; fifth, that the district court erred in holding Urban Outfitters liable to Howard for nuisance; and, sixth, that the district court's interpretation of the notice and cure provision of the Lease was erroneous and that, on a proper interpretation, Howard should have been barred from bringing this suit.
 
 
 13
 With the exception of the second, these arguments lack substance and can be disposed of briefly. The argument that the Burlington noise ordinance is unconstitutionally vague is effectively precluded by our decision in Pro-Choice Network v. Schenck, 67 F.3d 359 (2d Cir.1994), where we held that an injunction prohibiting "excessively loud sound" that "injures, disturbs, or endangers the health or safety" of others is sufficiently clear to withstand a vagueness challenge. Id. at 373. Here, we have an ordinance that prohibits "loud or unreasonable noise," with "unreasonable" noise defined as that which "disturbs, injures or endangers the peace or health of another or ... endangers the health, safety or welfare of the community." Burlington Code of Ordinances § 21-13(b)(1). Notwithstanding Urban Outfitters' attempts to distinguish the two formulations, we find that the differences between the Schenck injunction and the Burlington noise ordinance are minor at best, and hold that the portion of the Burlington noise ordinance here applied passes constitutional muster.[1]
 
 
 14
 We also find no abuse of discretion in the district court's decision to admit evidence of prior excessive noise problems in Urban Outfitters' other stores. As the district court explained, the past noise complaints were probative of Urban Outfitters' "intent, plan, motive, and pattern of behavior after the execution of the lease agreement." Howard Opera House Assocs. v. Urban Outfitters, Inc., No. 2:99-CV-140, at 24 n. 9 (D.Vt. Jan. 24, 2002). See Fed.R.Evid. 404(b). In particular, the evidence was relevant to prove that Urban Outfitters had intentionally breached the implied covenant of good faith and fair dealing, because it tended to show that Urban Outfitters knew that its music had a disruptive effect and insisted on playing it at excessive levels despite that knowledge. This holding also moots Urban Outfitters' argument that the district court's finding that Urban Outfitters had breached the implied covenant of good faith and fair dealing could not be sustained without such evidence.
 
 
 15
 Further, the district court did not err in holding Urban Outfitters liable to Howard for nuisance. While Urban Outfitters argues that the Howard building occupant who complained of the nuisance, John Wadhams, occupied the space "in his capacity as an officer of Bruegger's [Corporation]," the district court heard evidence that Wadhams was also a partner of Howard and reasonably inferred that he was disturbed by the noise in that capacity as much as any other capacity.
 
 
 16
 Additionally, we reject Urban Outfitters' argument that the district court erroneously construed the notice and cure provision of the Lease and that, properly read, it barred Howard's suit. The provision reads:
 
 
 17
 For purposes of this Lease, it shall be deemed a "default" by Tenant hereunder... if Tenant shall fail in the performance or observance of any other agreement or condition on its part to be performed or observed and if Tenant shall fail to cure said failure within thirty (30) days after receipt of notice of said failure from Landlord ... then ... Landlord lawfully may, in addition to any remedies otherwise available to Landlord, immediately or at any time thereafter, and without further demand or notice, enter into and upon said Demised Premises or any part thereof in the name of the whole and repossess the same as of his former estate ....
 
 
 18
 While Howard's initial notice of default was not received by Urban Outfitters until May 4, 1999, and this suit was filed the next day, the district court correctly found that Howard was in technical compliance with the above-quoted provision because it subsequently sent a second notice, dated April 7, 2000, and waited thirty days before filing the amended complaint upon which the case ultimately proceeded. More importantly, at no time did Urban Outfitters provide convincing evidence that it was in any way prejudiced by the initial defect in process. On the contrary, as the district court found, Urban Outfitters had no intention of curing the default, and a thirty-day waiting period would have been a futility. See Howard Opera House Assocs. v. Urban Outfitters, Inc., No. 2:99-CV-140, at 6-7 (D.Vt. Nov. 29, 2001).
 
 
 19
 As noted at the outset, however, there is some merit to Urban Outfitters' contention that the injunction issued on April 17, 2002 is vague. Rule 65(d) of the Federal Rules of Civil Procedure provides in relevant part that: "Every order granting an injunction ... shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ...." It is one thing for Burlington to cast its noise ordinance in sufficiently general terms to cover the myriad situations to which it is addressed, see Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), and quite something else for an injunction, which applies to a particular case, and violation of which is punishable by contempt, to fail to provide reasonable specificity. Here, the injunction at issue enjoins Urban Outfitters from making noise that "substantially and unreasonably interferes with other tenants' use of their space" or "unreasonably disturb[s] other tenants." On its face, this lacks the "reasonable detail" required by the rule. See Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 52 (2d Cir.1996). Although the district court noted that "[t]here is more than sufficient context in this case to inform [Urban Outfitters] of the precise steps it must take to conform with the Order," Howard Opera House Associates v. Urban Outfitters, Inc., No. 2:99-CV-140, at 4 (D. Vt. April 17, 2002), it then declined to include any reference to the specific facts of the case in the order itself. The very fact that the district court has at its disposal a body of information that it can use to tailor the injunction is all the more reason to require it to do so.
 
 
 20
 Accordingly, for the aforementioned reasons, we affirm the district court's judgment and orders in all respects, except that we vacate the April 17, 2002 injunction as insufficiently specific under Rule 65(d) and remand to the district court so that it may redraft the injunction more precisely.
 
 
 
 Notes:
 
 
 *
 The Honorable Jed S. Rakoff, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Given this holding, we need not reach the question whether the enforcement by a court of a contractual provision that incorporates a municipal ordinance by reference involves sufficient state action to enable the affected party to bring the constitutional challenge here raised