NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 16

No. 2020-192

| | |
|---|---|
| William Pettersen | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Monaghan Safar Ducham PLLC | December Term, 2020 |

Helen M. Toor, J.

William Pettersen of Pettersen Law PLLC, Pro Se, Colchester, Plaintiff-Appellant.

Eric D. Jones and Justin G. Sherman of Langrock Sperry & Wool, LLP, Burlington, for
  Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Howard, Supr. J. (Ret.),
                Specially Assigned


¶ 1.    **REIBER, C.J.**    Plaintiff William J. Pettersen appeals the trial court's decision granting summary judgment to his former law firm, defendant Monaghan Safar Ducham PLLC. He argues that sufficient evidence exists to raise a genuine issue of material fact as to his claims for promissory estoppel, unjust enrichment, intentional misrepresentation, and wrongful termination in violation of public policy, and thus contends that summary judgment was inappropriate. We conclude that the trial court properly granted summary judgment and affirm.

¶ 2.     The following information is drawn from the statements of facts submitted by the parties in connection with defendant's motion for summary judgment.[1]  Defendant hired plaintiff as an associate attorney in February 2016.  Throughout his nearly two-year employment with defendant, plaintiff believed that he was underpaid.  His starting salary was $55,000 per year, as well as a $3000 annual stipend for health insurance, and other benefits.  When defendant's managing partner, Attorney Monaghan, initially offered the job to plaintiff, plaintiff expressed concern with the salary but nevertheless accepted the job.  Plaintiff signed an employment letter stating that his employment was at will, incorporating the above starting salary, and noting the potential for bonuses based on his performance and defendant's revenues.  After plaintiff worked for defendant for about six months, defendant conducted a performance review and gave plaintiff a nine-percent raise, increasing his base salary to $60,000 per year.  Plaintiff was still not satisfied.  Throughout his time working for defendant, plaintiff looked for other jobs in Vermont.

¶ 3.     Soon after the performance review, plaintiff spoke with Attorney Monaghan regarding his compensation concerns.[2]     Plaintiff told Attorney Monaghan that he was uncomfortable with his salary and sought more information regarding defendant's typical partnership track.  Attorney Monaghan asked plaintiff what he thought was a reasonable trajectory.  Plaintiff responded that he thought becoming a partner and earning $100,000 annually after five years was reasonable, if his good performance continued.  In response, Attorney Monaghan said

---

[1] Defendant submitted to the trial court a statement of undisputed material facts as required by Vermont Rule of Civil Procedure 56(c).  Rather than responding to defendant's statement and indicating which facts he disputed, plaintiff filed his own statement.  The trial court noted that plaintiff's approach fell short of the Rule 56 requirement because it "need[ed] a clear record of what is or is not disputed, not competing narratives."  Under Rule 56(e), the court accordingly took defendant's facts "as undisputed to the extent that they are supported by record evidence," and as to plaintiff's facts, "look[ed] only to the record evidence [plaintiff] cite[d], not his characterizations of it."  See V.R.C.P 56(e).  We take the same approach as the trial court.

[2] Defendant disputes the substance of this conversation.  However, for purposes of summary judgment, defendant accepted plaintiff's version of events as true.

2

that trajectory was reasonable. Plaintiff clarified that to reach this salary, it would be reasonable that his raises would need to increase as a percentage of his salary, and Attorney Monaghan agreed this was reasonable. Plaintiff asserted that he decided to continue working for defendant based on this conversation, as he viewed Attorney Monaghan's statements as a promise that defendant made to him concerning compensation and partnership.

¶ 4. During his time working for defendant, plaintiff received additional raises and bonuses. In December 2016, defendant gave him a $6000 bonus. He received another $6000 bonus in December 2017. Upon seeing the check, plaintiff told partners that he was "hoping for a bit more." In response, defendant gave him an additional $1100 bonus. In March 2018, defendant conducted plaintiff's second performance review and plaintiff received a four-percent raise, increasing his base salary to $62,500 per year.

¶ 5. After receiving this raise, plaintiff decided that he needed to leave his job with defendant because he believed that defendant breached its "partnership track" promise to him. Later that month, plaintiff copied client files to his personal computer. He also downloaded his emails, calendars, and contact list. He obtained trial accounts with Westlaw and LexisNexis. On April 10, 2018, plaintiff wrote a letter to Attorney Monaghan asserting that he believed he had legal claims against defendant and offering to settle. Plaintiff stated, "I must now look for different employment at a law firm where I will be starting anew," but ended the letter saying, "I will continue my excellent service to [defendant] and its clients in the meantime."

¶ 6. Attorney Monaghan and another partner, Attorney Safar, met with plaintiff immediately and asked if there was anything that they could do to keep him employed with defendant. Plaintiff responded that, based on the way he felt he had been treated, there was no way that he could stay with defendant, and that he was seeking other employment. Attorney Safar responded that it appeared that plaintiff was resigning, but plaintiff told her that was "irrational." Later that day, defendant responded to plaintiff's letter, rejected his settlement offer, and told

3

plaintiff that "to the extent you have not already resigned your employment, we hereby terminate your employment with [defendant] as of today."

¶ 7.    In February 2019, plaintiff filed suit, asserting claims for promissory estoppel, unjust enrichment, intentional misrepresentation, wrongful termination, defamation, and tortious interference with contractual relations.  As relevant to this appeal, he first alleged that defendant promised him "a partnership-track position that would earn compensation of $100,000 within five years" and that he would receive "larger raises each of those years."  He argued that he relied on this promise and continued to work for defendant when he otherwise would have left, and thus sought recovery under a promissory estoppel theory.  Next, he argued that defendant was unjustly enriched by his work because it was inequitable for defendant to benefit from plaintiff's work and billable hours under these circumstances.  Third, he contended that Attorney Monaghan's statement—that plaintiff's goal of making partner and earning $100,000 in five years was "reasonable"—constituted an intentional misrepresentation because defendant never intended to make plaintiff a partner, but Attorney Monaghan made the statement to induce plaintiff to continue working for defendant.  Finally, he asserted that defendant's decision to fire him after he raised his legal claims in the April 2018 letter violated public policy.  Defendant moved for summary judgment on all claims.[3]

¶ 8.    The court granted defendant's motion for summary judgment.  As to the promissory estoppel claim, the court concluded on the undisputed facts that Attorney Monaghan's statement— that plaintiff's proposed career trajectory was "reasonable"—was a vague statement that was not actionable as a promise.  Even if the statement were a promise, the court concluded that plaintiff had shown neither reliance upon nor detriment from it.  As to the unjust enrichment claim, the court observed nothing unjust because defendant paid plaintiff the agreed-upon salary and plaintiff

---

[3]  Plaintiff did not oppose defendant's motion as to his claims for defamation and tortious interference with contractual relations and does not pursue those claims on appeal.

4

received several bonuses and raises. The court rejected plaintiff's argument that defendant was unjustly enriched by plaintiff's work because it billed more than it paid him, as "[t]hat is the way law firms work." As to the intentional misrepresentation claim, the court stated again that plaintiff had not shown reliance on Attorney Monaghan's statement. Additionally, it concluded that the claim failed because the statement was merely an opinion and was not part of a scheme to defraud plaintiff. Finally, as to the wrongful termination claim, the court concluded that even if a jury believed that plaintiff was fired, this claim would fail because defendant's decision to fire an employee who threatened to sue involved only the private interests of the parties and thus did not implicate—much less violate—public policy. This appeal followed.

¶ 9. This Court "review[s] summary judgment decisions de novo, using the same standard as the trial court." Morisseau v. Hannaford Bros., 2016 VT 17, ¶ 12, 201 Vt. 313, 141 A.3d 745. Under Vermont Rule of Civil Procedure 56, summary judgment is appropriate when the undisputed facts show that the moving party is entitled to judgment as a matter of law. Id.; V.R.C.P. 56(a). We will accept as true the allegations made in opposition to the motion if they are supported by the record. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310. "[T]he nonmoving party receives the benefit of all reasonable doubts and inferences." Id.

¶ 10. On appeal, plaintiff argues that the trial court erred by granting summary judgment. He asserts that there exist genuine issues of material fact as to each element of his claims, making summary judgment improper. We conclude that summary judgment was appropriate here and address each claim in turn.

I. Promissory Estoppel

¶ 11. To prevail on his promissory estoppel claim, plaintiff must show that: (1) defendant made a promise to plaintiff that defendant should have reasonably expected to induce action or forbearance; (2) plaintiff relied on the promise to his detriment; and (3) injustice can be avoided

5

only by enforcement of the promise. <u>Foote v. Simmonds Precision Prods. Co.</u>, 158 Vt. 566, 573, 613 A.2d 1277, 1281 (1992) (adopting elements set out in Restatement (Second) of Contracts).

¶ 12. Plaintiff argues that Attorney Monaghan's statement—that plaintiff's proposed five-year trajectory towards partnership and $100,000 annual compensation was "reasonable"— was an enforceable promise based on the context of the conversation. Plaintiff asserts that because he told Attorney Monaghan that he needed more specific information on his career trajectory to feel comfortable continuing to work for defendant, defendant should have known that plaintiff was seeking a specific assurance and was not just discussing his general career path. Plaintiff also argues that the statement was a "specific five-year compensation plan that accounted for all variables": the minimum compensation, the method of determining raises, the timeline, and the requirement of continued good performance.

¶ 13. We disagree that defendant's statement constituted an actionable promise as a matter of law. "Courts have generally required a promise of a specific and definite nature before holding an employer bound by it." <u>Dillon v. Champion Jogbra, Inc.</u>, 175 Vt. 1, 10, 819 A.2d 703, 710 (2002). A "vague assurance" is insufficient. <u>Id</u>. "The promise must be more than a mere expression of intention, hope, desire, or opinion, which shows no real commitment." <u>Nelson v. Town of Johnsbury Selectboard</u>, 2015 VT 5, ¶ 56, 198 Vt. 277, 115 A.3d 423 (quotation omitted).

¶ 14. The undisputed facts before the trial court do not support plaintiff's contention that defendant promised him a specific five-year compensation plan. Defendant did nothing more than agree that plaintiff's proposed trajectory was "reasonable." This is exactly the type of "hope" or "opinion" that "shows no real commitment" and does not suffice to create a promise. <u>Id</u>. (quotation omitted). At best, Attorney Monaghan was expressing his opinion that it was reasonable that plaintiff might have the opportunity to become a partner and earn $100,000 annually in five years.

¶ 15. Because plaintiff has failed to show that defendant made an enforceable promise, we need not address the other elements of promissory estoppel. However, we note that even if

defendant's statement constituted a promise, on this record plaintiff failed to demonstrate detrimental reliance and injustice. The record shows that plaintiff continued to look for other jobs in Vermont, undermining his claim that he stayed at his job with defendant and gave up other opportunities in reliance on defendant's alleged promise. Although plaintiff asserts that he forewent applying to more lucrative jobs out of state, plaintiff points to no cases—and this Court knows of none—suggesting that an employee is harmed by merely foregoing a job search in certain markets while continuing in another. Thus, plaintiff made no "detrimental change of position in reliance on the claimed promise" as our law requires. Overlock v. Cent. Vt. Pub. Serv. Corp., 126 Vt. 549, 554, 237 A.2d 356, 359 (1967). Likewise, given the vague nature of the alleged promise and the fact that plaintiff continued to look for other jobs in Vermont, plaintiff has failed to show that injustice could be avoided only if the alleged promise were enforced. See Tour Costa Rica v. Country Walkers, Inc., 171 Vt. 116, 123, 758 A.2d 795, 801-02 (2000) (listing factors tending to show that injustice can be avoided only by enforcement of the promise). Accordingly, the court properly granted summary judgment on this claim.

## II.  Unjust Enrichment

¶ 16.  To support a claim for unjust enrichment, plaintiff must show that: "(1) a benefit was conferred on defendant; (2) defendant accepted that benefit; and (3) it would be inequitable for defendant not to compensate" plaintiff for the value of the benefit. Unifund CCR Partners v. Zimmer, 2016 VT 33, ¶ 21, 201 Vt. 474, 144 A.3d 1045. This doctrine rests upon the principle that "[one should] not be allowed to enrich [oneself] unjustly at the expense of another." Legault v. Legault, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983) (quotation omitted). Evaluating an unjust enrichment claim "involves a realistic determination based on a broad view of the human setting involved rather than a limited inquiry confined to an isolated transaction." Savage v. Walker, 2009 VT 8, ¶ 8, 185 Vt. 603, 969 A.2d 121 (mem.) (quotation omitted).

¶ 17.   Plaintiff argues that defendant's "promise" induced plaintiff to perform work for defendant that he would not otherwise have performed, so defendant was unjustly enriched by plaintiff's work.  The trial court characterized this as a claim that defendant had been unjustly enriched because defendant billed more for plaintiff's work than it paid him, but plaintiff counters on appeal that this construction is too narrow.  Rather, he claims that defendant was unjustly enriched because he would not have continued to work for defendant in the absence of its "promise" to him.

¶ 18.   However, there are no facts showing that plaintiff conferred an uncompensated benefit on defendant here.  Defendant paid plaintiff the agreed salary for the work that he was hired to perform, and plaintiff even received numerous bonuses and raises.  The record does not show that he took on any additional work beyond the scope of his employment that could be considered uncompensated.  This latter fact distinguishes this case from the cases plaintiff cites in support of his argument; in each instance, the employee furnished an uncompensated benefit on the employer.  See Rothberg v. Xerox Corp., No. 12-617 (BAH), 2013 WL 12084543, at *2 (D.D.C. Jan. 4, 2013) (contending that employer failed to pay commissions to which employee was entitled); Silipo v. Wiley, 30 N.Y.S.3d 716, 718 (App. Div. 2016) (affirming jury verdict on unjust enrichment claim where employer promised to pay "compensation over and above [employee's] salary" for employee's assistance in selling business assets and failed to pay employee); Ludlow v. DeBerry, 959 S.W.2d 265, 274-75 (Tex. App. 1998) (reversing summary judgment on unjust enrichment claim because employee assumed "extra responsibilities" while other partner was away in exchange for partnership share).

¶ 19.   The record indicates that defendant fully compensated plaintiff for his work. Defendant was not unjustly enriched by plaintiff's continued work.  Summary judgment was appropriate on this claim.

8

### III. Intentional Misrepresentation

¶ 20. To prevail on his claim of intentional misrepresentation, plaintiff must show, by clear and convincing evidence, an "intentional misrepresentation of existing fact, affecting the essence of the transaction when the misrepresentation was false when made and known to be false to the maker, [that] was not open to the defrauded party's knowledge, and was relied on by the defrauded party to their damage." Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 141, 208 Vt. 578, 201 A.3d 326 (alteration omitted) (quotation omitted). Here, plaintiff argues that Attorney Monaghan's statement constituted an intentional misrepresentation because defendant never intended to make plaintiff a partner and pay him a $100,000 salary after five years. Intentional misrepresentation of future action constitutes a "misrepresentation of existing fact in that the actor has lied as to their current intention." Id. However, "mere promises to act in the future cannot constitute the requisite misrepresentation of existing fact that is essential to fraud" because "there is no present intention to act contrary to the promise." Union Bank v. Jones, 138 Vt. 115, 121, 411 A.2d 1138, 1342 (1980). Further, our case law distinguishes statements of fact from statements of opinion, explaining that "misrepresentation of the former can be fraud, but misrepresentation of the latter cannot," unless the misrepresentation of opinion is part of a scheme to defraud. Winey v. William E. Dailey, Inc., 161 Vt. 129, 133, 636 A.2d 744, 747 (1993).

¶ 21. This claim fails for the same reason that plaintiff's promissory estoppel claim fails: Attorney Monaghan's statement is best characterized as an opinion, not an intentional misrepresentation. Taken in the light most favorable to plaintiff, the exchange between the parties suggests at most that plaintiff hoped that he would become a partner and earn a $100,000 salary in five years, and Attorney Monaghan expressed his opinion that this hope was reasonable. Because Attorney Monaghan made a statement of opinion about plaintiff's career trajectory, there was no misrepresentation of any existing fact.

¶ 22.    Likewise, the record does not support plaintiff's contention that Attorney Monaghan knew his statement was false at the time he made it.  A person knowingly makes a misrepresentation when "the person accused . . . [is] found to have known that the statement was false, or to have made that statement with reckless indifference as to its truth."  Kneebinding, 2018 VT 101, ¶ 141 (quotation omitted).  Plaintiff strings together several pieces of "circumstantial evidence," in his words, which he alleges show that defendant had fraudulent intent.  In sum, he argues: (1) no associate working for defendant has ever made partner; (2) Attorney Monaghan lied in his deposition by saying that defendant did not profit from plaintiff's work; (3) defendant actively recruited entry-level employees; (4) Attorney Monaghan never asked Attorney Safar to approve his "promise" to plaintiff; (5) partners did not agree about defendant's standard for an associate attorney to make partner; (6) Attorney Monaghan delayed plaintiff's second annual review for seven months; (7) contrary to Attorney Monaghan's assertion when plaintiff was hired, bonuses did not necessarily reflect billed hours; and (8) defendant invented a false reason to fire plaintiff after he raised his legal claims against it.  We make no conclusion about the veracity of these claims, but even if true, they do not support an inference that Attorney Monaghan knowingly made a false statement in this instance.  Attorney Monaghan never promised plaintiff any compensation or promotion; he merely said that plaintiff's proposed path was "reasonable."  There is no indication that Attorney Monaghan knew this statement was false because the statement is best characterized as an opinion about a potential outcome.  See Winey, 161 Vt. at 133, 636 A.2d at 747.

¶ 23.    The record does not support plaintiff's contention that defendant made an intentional misrepresentation to him.  Summary judgment was proper here.

IV.  Wrongful Termination in Violation of Public Policy

¶ 24.    Plaintiff alleges that he was fired for threatening to sue defendant and, accordingly, that his termination violates public policy.  As an initial matter, we note that the parties dispute

10

whether plaintiff resigned or was fired by defendant. Defendant argues that plaintiff resigned, pointing to his April 2018 letter, in which he stated that he "must now look for different employment." Additionally, in their meeting the same day, plaintiff told partners, Attorneys Monaghan and Safar, that there was "no way" he could continue working for defendant and confirmed that he was looking for another job. Plaintiff maintains that he was fired, arguing that he told partners during the meeting that he was not quitting and pointing to defendant's letter, which stated that if plaintiff was not resigning, then defendant was firing him. As the trial court noted, "the correspondence between the parties can support both parties' interpretations." Accordingly, it analyzed whether plaintiff's theory could support a legal claim if a jury found that he was fired. We take the same approach here.

¶ 25. Plaintiff asks us to conclude that public policy prohibits an employer from firing an employee in response to the employee's threat to sue the employer. Plaintiff argues that there are several public policies violated when an employer fires an employee in response to a lawsuit, including the employee's rights to access the courts, to raise claims against an employer, and to be free from retaliation for raising such claims. He relies upon the Vermont Constitution's guarantee of access to the courts, Vt. Const. ch. 1, art. IV, and points to a case where, in the context of a claim for intentional interference with contractual relations, we concluded that the threat to sue a third party cannot meet the "wrongful act" element of that tort because "the threat of filing a lawsuit is . . . protected by our constitutional right to access the courts." Kollar v. Martin, 167 Vt. 592, 594, 706 A.2d 945, 947 (1997) (mem.). Additionally, he asserts that anti-retaliation statutes prohibiting discharge in retaliation for claims like employment discrimination and minimum wage violations, see, e.g., 21 V.S.A. §§ 397(a), 495(a)(8), "reflect the overarching public policy in Vermont that employees should not be terminated in retaliation for raising legal claims against employers."

11

¶ 26. An at-will employee may be fired for any reason "unless there is a clear and compelling public policy against the reason advanced for the discharge." Payne v. Rozendaal, 147 Vt. 488, 491, 520 A.2d 586, 588 (1986) (quotation omitted) (emphasis omitted). "[P]ublic policy may be said to be the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." Id. at 492, 520 A.2d at 588 (alteration omitted) (adopting definition of public policy stated by Ohio Supreme Court in Pittsburgh, Cincinnati, Chi. & St. Louis Ry. Co. v. Kinney, 115 N.E. 505, 507 (1916)). Public policy can be found in constitutions, statutes, and the common law, but "[m]ore often . . . it abides only in the customs and conventions of the people—in their clear consciousness and conviction of what is naturally and inherently just and right between [people]." Id. at 492-93, 520 A.2d at 588-89 (quotation omitted). "An employee seeking to invoke the public-policy exception to at-will employment must demonstrate that [the] employer's conduct was 'cruel or shocking to the average person's conception of justice.' " Boynton v. ClearChoiceMd, MSO, LLC, 2019 VT 49, ¶ 8, 210 Vt. 454, 216 A.3d 1243 (alteration omitted) (quoting Payne, 147 Vt. at 493, 520 A.2d at 589).

¶ 27. This Court has not yet considered whether an employer violates public policy by firing an employee who has threatened to sue the employer. Some Ohio courts have recognized a claim for wrongful termination in violation of public policy when an employer fires an employee who has sued the employer. See Terrell v. Uniscribe Prof. Servs., Inc., 348 F. Supp. 2d 890, 896 (N.D. Ohio 2004) (concluding that "Ohio has a clear public policy against employers discharging an employee because he or she has sued them"); Jenkins v. Parkview Counseling Ctr., No. 99 CA 60, 2001 WL 15938, at *7 (Ohio Ct. App. Jan. 3, 2001) (pointing to public policy prohibiting employer from firing employee for consulting attorney and concluding policy extends to protect employee who files suit). But see Taylor v. Volunteers of Am., 153 Ohio App. 3d 698, 2003-Ohio-4306, 795 N.E.2d 716, at ¶¶ 9-14 (determining that public policy protecting employee's right

12

to know legal rights and remedies does not extend to filing suit where claim is not statutorily protected because it disrupts employer-employee relationship). Most jurisdictions to consider this claim, however, have concluded that public policy does not protect an employee from termination if the employee sues or threatens to sue the employer. See, e.g., Kavanagh v. KLM Royal Dutch Airlines, 566 F. Supp. 242, 244 (N.D. Ill. 1983); Alexander v. Kay Finlay Jewelers, Inc., 506 A.2d 379, 381 (N.J. Super. Ct. App. Div. 1986).

¶ 28. However, we need not determine the availability or scope of this type of wrongful termination claim under Vermont law because we conclude that plaintiff has not presented facts tending to show that his termination violated a "clear and compelling public policy" such that defendant's conduct was "cruel or shocking to the average person's conception of justice." Boynton, 2019 VT 49, ¶ 8 (alteration omitted) (quotation omitted). We have explained that "public policy restraints . . . are enforced to protect community norms for the benefit of the public at large, as well as the individual employee." LoPresti v. Rutland Reg'l Health Servs., Inc., 2004 VT 105, ¶ 20, 177 Vt. 316, 865 A.2d 1102. In LoPresti, we found public policy implicated when the employee alleged that he was fired for refusing "to potentially violate state law and his professional ethical code by referring patients to doctors whom he believed were providing improper care" because "the enforcement of public policy . . . would have a tangible connection to the protection of health care consumers." Id. (quotation omitted). On the other hand, we have found that purely private concerns do not implicate public policy. See Madden v. Omega Optical, Inc., 165 Vt. 306, 313-14, 683 A.2d 386, 391 (1996) (holding that termination in response to employees' refusal to sign non-compete agreement did not implicate public policy).

¶ 29. Here, plaintiff's threatened lawsuit against defendant involved his own future compensation and promotion opportunities and thus does not implicate any public concern. Instead, plaintiff's claims resemble the employees' claim in Madden, where we explained that the "potential impact on their careers" of a non-compete agreement was a " 'private or proprietary'

13

interest that falls outside the public policy exception." Id. Plaintiff's claims for future promotion and pay opportunities involve only his own pecuniary interests and are precisely the type of claims that fall outside the scope of public policy protection. See Jones v. Keogh, 137 Vt. 562, 563-64, 409 A.2d 581, 582 (1979) (concluding no public policy implicated when employee fired after dispute over employer's vacation time and sick leave policies). Moreover, plaintiff raised his claims against defendant after announcing his intent to leave and while attempting to negotiate a severance package. Thus, we cannot conclude that his termination was "so contrary to our society's concern for providing equity and justice" that there is a clear and compelling public policy against it. Madden, 165 Vt. at 314, 683 A.2d at 391. The trial court appropriately granted summary judgment on this claim.

Affirmed.

FOR THE COURT:

_____

Chief Justice