VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 20-ENV-00007



| | |
|---|---|
| Town of Jericho v. Richard Workman | DECISION ON MOTION |

There are two motions before the Court in this municipal enforcement action against Respondent Richard Workman for alleged violations of the Town of Jericho's zoning regulations. In the first, Plaintiff Town of Jericho (Town) requests summary judgment on its claim for injunctive relief and penalties pursuant to 24 V.S.A. § 4451 and § 4452, citing violations of three sections of the Town of Jericho's Land Use and Development Regulations (Regulations) on Respondent Workman's property.  Mr. Workman represents himself in his opposition to the motion for summary judgment, and the Town is represented by Attorney Claudine C. Safar.

In the second motion, Petitioner Phillip R. Danielson, representing himself, claims to have an interest in this action as the owner of a neighboring property and seeks to be conferred party status should the case proceed to trial.  The Town opposes Mr. Danielson's petition. The Court understands this to be a motion to intervene and addresses it at the conclusion of this decision.

**Legal Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a), applicable here through V.R.E.C.P. 3.  The nonmoving party "receives the benefit of all reasonable doubts and inferences," but must respond with more than unsupported allegations in order to show that material facts are in dispute.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.  For the purposes of the motion, the Court "will accept

as true the allegations made in opposition to . . . summary judgment, so long as they are supported by affidavits or other evidentiary material." Id.; Pettersen v. Monahan Safar Ducham, PLLC, 2021 VT 16, ¶ 9. The Court may allow self-represented litigants some leeway in an effort to be "cautious that the pro se litigant is not taken advantage of by strict application of rules of procedure," though it "does not abuse its discretion where it enforces the rules of civil procedure equitably, even against a pro se litigant." In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 23, 188 Vt. 262 (2010) (internal quotations removed).

**Findings of Fact**

The Town submitted a statement of undisputed material facts containing citations to evidentiary material along with the legal memorandum in support of their motion for summary judgment. Mr. Workman did not submit a statement of undisputed material facts but did respond in detail to the arguments and assertions of fact in the Town's motion and submitted his own evidentiary material in an attempt to establish a dispute. In reviewing the factual assertions, the Court does not rely on facts that lacked evidentiary support or that Mr. Workman materially disputed with sufficiently supported allegations.

After reviewing the facts proposed in the parties' filings, the Court finds the following to be undisputed. The facts set out below do not constitute factual findings with relevance outside of this summary judgment decision. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)). The Court relies on these facts for the sole purpose of deciding on the Town's request for summary judgment. Additionally, the findings describe the state of Mr. Workman's property up to the first few months of 2021, as the Court does not have information on its condition after the date of the last filing related to this motion on March 12, 2021.

1. Plaintiff Town of Jericho is a Vermont municipal corporation with its principal office in Jericho, Chittenden County, Vermont.
2. Defendant Richard Workman owns property located at 3 Railroad Circle in Jericho, Vermont (the Property).

2

3. The Town adopted the Jericho Land Use and Development Regulations on April 18, 2019, which went into effect on May 9, 2019, and have been in effect at all relevant times since that date. The Regulations define terms such as "junk," "solid and hazardous wastes," "motor vehicles," and "junkyards," and place limitations on the outdoor storage or presence of such personal property. See Plaintiff's Exhibit 1.

4. Mr. Workman has been storing various types of personal property outdoors for multiple years, including motor vehicles, appliances, scrap metal, plumbing fixtures, construction materials, and trash, to varying extents and with varying states of screening or containment.

5. In 2007, the Town brought an enforcement action against Mr. Workman regarding the items stored on the Property which resulted in a judgment order requiring him to either remove all personal property from the exterior premises or build fencing to screen items from view of adjoining properties or the Town Road. Plaintiff's Exhibit 3, Town of Jericho v. Richard Workman, No. 111-6-07 Vtec (Vt. Envtl. Ct. Oct. 22, 2007) (Durkin, J.).

6. Mr. Workman cleaned up the Property at some point following the 2007 Order, installing fencing and a portable shed to provide screening in some areas. Since these efforts, the condition of the Property has again deteriorated, with numerous types of personal property stored outdoors in a manner that is visible to the public from the public road and adjoining properties.

7. The Town issued a Notice of Zoning Violation (NOV) to Defendant on July 31, 2020 (noting that the date on the NOV lists the year as 2019 because of a typo) and the NOV was delivered to Mr. Workman by certified mail on August 4, 2020. Plaintiff's Exhibits 4 and 5.

8. Mr. Workman failed to cure the violations or obtain permits from the Town for the items subject to the NOV in the seven-day period following receipt of the NOV, nor did he appeal the NOV. The NOV subsequently became final.

9. The Property is not licensed to operate as junkyard in accordance with State of Vermont regulations.

10. Since the Town issued the NOV, Mr. Workman has removed some items subject to the NOV from the exterior premises of the Property but many remain.

11. The Town's Zoning Administrator (ZA) took photos of the Property for evidence on December 6, 2020 and January 11, 2021 of items stored outside, including multiple gasoline cans, liquified petroleum (LP) tanks, a glass container storing vehicle fluid, various pieces of machinery and metal, loose garbage around the property and particularly near the motor home, as well as a large pile of bagged trash.

12. Following the ZA's visits to the Property, Mr. Workman removed the pile of bagged trash and relocated the gasoline cans and glass container to a fire-proof container inside the fenced-in area.

13. There are also a number of vehicles located on the property: a motor home (RV), which is damaged and being used to store tools, and which Mr. Workman is in the process of dismantling; a semi-trailer, which Mr. Workman is modifying with parts from the RV to serve as a residence; a camping trailer, the inside of which has been significantly damaged by racoons; two utility trailers – an enclosed Pace trailer storing equipment and an open trailer used for clearing the Property; and two remaining cars after Mr. Workman sold the other three.

14. The semi-trailer, the camping trailer, the RV, and the utility trailers are all located outdoors and within public view from abutting property or a public road, and have been stored in that manner for more than 30 days. The two cars are located in the fenced-in area of the Property, screened from public view.

15. One of the cars, the Ford Explorer, and one of the trailers, the Pace trailer, were actively registered in Vermont through August 2021.[1]

16. Mr. Workman has been seeking treatment for serious health concerns since the Fall of 2019, and the occasionally debilitating effects of illness have limited his ability to work on the Property at times.

---

[1] Mr. Workman alleges that several of the other vehicles are also registered but only submitted evidence of registration for the Ford Explorer and the Pace trailer. Neither party submitted evidence as to whether the vehicles are inspected.

17. Mr. Workman has expressed the intention to clear the Property and tear down the building located on it, and received a proposal from a contractor for such services. The contractor proposed a timeline of June 15, 2021 to September 30, 2021.

**Discussion**

**A. Town Motion for Summary Judgment**

The Town requests an order pursuant to 24 V.S.A. § 4452 that requires Mr. Workman to correct and abate violations of three sections of the Town of Jericho's Land Use and Development Regulations (Regulations) as well as an award of penalties under 24 V.S.A. § 4451. The Town alleges violations of § 4.7.12, § 11.10.2, and § 11.10.3 of the Regulations and argues that summary judgment is appropriate because the material facts establishing violations of those three sections on the Property remain undisputed.

In his responses in opposition to the Town's motion for summary judgment, Mr. Workman's main objection appears to be with the amount of time given to him for completing the work necessary to clear the Property. While Mr. Workman challenges some of the Town's proposed facts and characterizations about the Property, he also confirms the presence of many of the items the Town cites as a basis for the violations. Mr. Workman expresses a desire to comply and to clean up the Property but argues that the amount of time given to him by the Town for doing so was unreasonable, and that his progress has been hindered by illness and the onslaught of COVID-19. Mr. Workman requests that the Court consider the September 30, 2021 date suggested by a contractor estimating a timeline for clearing the lot, Defendant's Exhibit 44, as a date for bringing the Property into compliance.

I.      Section 4.7.12

The Town alleges that the Property is in violation of § 4.7.12 of the Regulations pertaining to the operation of junkyards. Under this section, a junkyard must be "licensed in accordance with the State of Vermont regulations," "set back at least 100 feet from all property lines," "screened year-round from public view and from adjoining properties," "secured as necessary to protect public health, safety, and welfare, and neighboring properties," and materials stored on the property "shall not adversely affect surface, ground or drinking water supplies," among other

restrictions. Town of Jericho Land Use and Development Regulations (Regulations) §§ 4.7.12.1, 3 – 6. The term "junkyard" is defined in the Regulations as:

> JUNKYARD: Any place of outdoor storage or deposit which is maintained, operated or used in connection with a business for storing, keeping, processing, buying or selling junk, or as a scrap metal processing facility. In addition, "Junkyard" (also known as a Salvage Yard) is defined as any place of outdoor storage or deposit, that is maintained or used for storing or keeping four [4] or more wrecked or disabled, unregistered and/or uninspected motor vehicles, trailers, campers and tow-behinds, or boats. This term does not apply to a COMMERCIAL GARAGE where wrecked or disabled motor vehicles are stored less than ninety [90] days for inspection or repairs.

Regulations § 2 (original emphasis). The Regulations define "junk" as:

> JUNK: Old or scrap copper, brass, iron, steel, or other metal, and other old or scrap or nonferrous material, including but not limited to aluminum, rope, rags, plastic or pulp products, batteries, glass, rubber debris, waste, trash or any discarded, dismantled, wrecked, scrapped or ruined MOTOR VEHICLE, appliance, equipment, or parts thereof.

Regulations § 2 (original emphasis).

The undisputed facts establish that the Property falls inside the scope of the term "junkyard" as defined by the Regulations. Significantly, Mr. Workman is using the Property to store or keep more than four motor vehicles outdoors, in conditions specified by the Regulations. Mr. Workman asserts that two vehicles, the Ford Explorer (one of two cars on the Property) and the Pace trailer (one of two utility trailers on the Property), are registered. Accepting Mr. Workman's offer, there are still five other qualifying vehicles on the property. The RV, the camper trailer, the semi-trailer, the open top trailer, and the second car are all significantly disabled in some way or without the required registration or inspection, or all three.

Mr. Workman has also allowed the exterior premises of the Property to be a place of storage or deposit for numerous items meeting the definition of "junk" in the Regulations, from scrap metals to appliances to trash.

As a junkyard in the meaning of the Regulations, the Property is subject to the restrictions in § 4.7.12 on the operation of junkyards. The facts establish that Mr. Workman has failed to comply with a number of those restrictions, however, including that he has not licensed the Property as a junkyard, nor screened the Property from public view. The existing fencing on the Property only screens a portion of the exterior premises, and many of the vehicles are located

6

outside of that fenced-in area.  Additionally, there is nothing to suggest that the Property is secured to protect public safety and health.  The Court finds that the Property is in violation of § 4.7.12 of the Regulations.

II.      Section 11.10.3

The number of vehicles that Mr. Workman stores outdoors on the Property also violates § 11.10.3 of the Regulations.  Section 11.10.3 concerns the outdoor storage of motor vehicles, stating:

> No person shall permit more than three [3] unregistered and/or uninspected motor vehicles or major part or portion of a motor vehicle to remain for more than thirty [30] consecutive days on premises owned, occupied, or controlled by him if the vehicle or parts are within view from any public way or abutting property, unless the vehicle is regularly operated on the premises, or unless the premises constitute a working farm or a permitted motor vehicle dealership. Any motor vehicle, or portion thereof (such as a trailer), used as a storage structure shall meet all applicable district setbacks.

Regulations § 11.10.3.  The term "motor vehicles" is defined as:

> MOTOR VEHICLE: Any mechanically powered medium of transport designed to move people or cargo including, but not limited to aircraft, watercraft, automobile, bus, truck, tractor, trailer (excluding a MOBILE HOME), mower, tank, RECREATIONAL VEHICLE, go-cart, motorcycle, snowmobile, or all-terrain vehicle, regardless of whether or not the device is currently functional.

Regulations § 2 (original emphasis).

The undisputed facts show that the Property is in violation of § 11.10.3 because of the presence of more than three vehicles in public view.  While the two cars are screened from public view inside the fenced-in area of the Property, the RV, camper trailer, open trailer, and semi-trailer are visible from the public road or abutting properties.  All of these vehicles fall inside the Regulation's definition of "motor vehicles" and have been on the Property for significantly more than 30 days, but have not been shown to be registered or inspected.

III.     Section 11.10.2

The storage of vehicles and junk items outdoors on the Property poses risks to public health and safety that are the subject of another section of the Regulations.  Section 11.10.2 concerning solid and hazardous wastes stipulates that:

7

No trash, garbage, construction debris, or hazardous or corrosive wastes or chemicals, junk, or other refuse shall be stored on a lot in such a way that pollutes surface or groundwater or that threatens public health and safety.

Regulations § 11.10.2.

Though Mr. Workman has made some improvements since the Town issued the NOV, he has not sufficiently delt with the risks posed by the vehicles and junk on the Property. There are still a large number of aging vehicles being stored outside, many in very poor condition, exposing the land and water to the risk of pollution from chemicals stored inside the vehicles. The trash and other junk items deposited around the Property also threaten public safety as potential sources of pollution and attractions for wild animals.

The undisputed facts establish that the Property is in violation of all three sections of the Regulations as alleged by the Town, and the Court consequently grants summary judgment in favor of the Town.

### B. Motion to Intervene

Phillip R. Danielson files in support of the Town's motion. Mr. Danielson alternatively seeks to intervene as an interested party. Mr. Danielson offers that his interests are not aligned with Town. He asserts that the outcome of this matter may impact the value of his property.

As the Court grants the Town's motion, Mr. Danielson's request to intervene is moot.

### Order

For the foregoing reasons, the Town of Jericho's motion for summary judgment against Richard Workman is **GRANTED**. Mr. Workman is ordered to correct and abate the violations of § 4.7.12, § 11.10.3, and § 11.10.2 of the Town of Jericho Land Use and Development Regulations through the removal of vehicles, scrap metal and debris, hazardous material, and all other non-conforming items on his property located at 3 Railroad Circle in Jericho, Vermont, within three months of this order.[2]

---

[2] The Town also moved for the removal of the house located on the Property but did not provide the Court with facts as to why it should be removed or explanation of the Town's entitlement to judgment as a matter of law on this issue.

8

The Town requests that the Court's order include an assessment of penalties for the above violations pursuant to 24 V.S.A. § 4451. The Town did not assert facts specific to an award of penalties and did not offer an analysis relating to a penalty calculation. Thus, the Court does not include penalties in this decision and order.

The Court has set this matter for a follow-up status conference pursuant to the enclosed notice to address a process to consider penalties.

The Court **DISMISSES** Petitioner Phillip R. Danielson's motion to intervene as moot. Petitioner sought to intervene only in the alternative that the Town's motion was not granted.

Electronically Signed: 10/18/2021 4:23 PM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division