Filed 03/07/24

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street, PO Box 187
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03475

---

**Shayne Lynn v. Slang Worldwide, Inc. et al**

---

# RULING ON MOTION TO DISMISS (Motion #2)

Filer:        Justin B. Barnard, Esq.
Filed Date:  October 31, 2023

This case involves the merger of two companies. Shayne Lynn ("Lynn") asserts that Slang Worldwide, Inc. ("Slang"), Peter Miller, and Christopher Driessen (together, "Defendants") induced him, through negligent and fraudulent misrepresentations, to merge his company with theirs, and that he suffered financial harm as a result of the merger. Defendants move to dismiss the complaint for failure to state a claim.

## Facts Asserted in the Complaint

Lynn asserts the following in his complaint, which the court assumes to be true for purposes of ruling on the motion to dismiss. Lynn was the majority owner of High Fidelity, Inc., a cannabis business. Complaint ¶ 7. Defendants Miller and Driessen owned and/or controlled Slang Worldwide, Inc., and in late 2020 they contacted Lynn to discuss creating a joint venture or merger of Slang with High Fidelity. Id. ¶¶ 16, 18–19. Miller and Driessen told Lynn that Slang was "financially sound and had a bright economic future," and they "promised that [Slang] would support an $18 million dollar investment into [High Fidelity] to financially support Mr. Lynn's growth plans." Id. ¶ 17. Defendants pursued High Fidelity, and Miller and Driessen eventually persuaded Lynn to negotiate a merger of High Fidelity with Slang and its soon-to-be established

subsidiary, Slang Vermont, Inc. ("Slang Vermont"). Id. ¶ 20. Slang created Slang Vermont in 2021 for the purpose of owning any of High Fidelity's assets that were included in the merger. Id. ¶ 21.

The parties negotiated a merger agreement (the "Agreement") in June 2021 that involved exchanging High Fidelity shares for shares in Slang. Id. ¶ 22. Driessen and Miller knew during the course of negotiations that (1) Slang was losing money and would not survive without an influx of cash to support ongoing operations and (2) Slang "would require valuable assets like [High Fidelity] to attract lenders." Id. ¶ 23. Despite this knowledge, they stressed to Lynn that Slang was in "excellent financial shape." Id. ¶ 26. Lynn took reasonable steps to determine Slang's financial status prior to the merger, but the financial data made available to Lynn was materially misleading and did not indicate that Slang was "about to fail." Id. ¶ 25. Driessen and Miller never disclosed that Slang "was teetering on the edge of insolvency." Id. ¶ 24. Within weeks of the merger, Lynn learned during a board of directors meeting that Slang would have to borrow $18 million to survive. Id. ¶ 27. The terms of the loan to Slang were onerous and ceded significant control to the lenders. To cut costs, Slang terminated Lynn from his position running the Vermont operations. Id. ¶ 28.

Lynn would not have agreed to merge High Fidelity with Slang if he had known Slang's "true financial status," and he has suffered significant financial loss as a consequence of Defendants' misrepresentations. Id. ¶¶ 29–30. Lynn asserts that Defendants engaged in fraud and negligent misrepresentation, and he seeks an award of punitive damages.

Discussion

Defendants move to dismiss the complaint. They rely on the express terms of the Agreement, arguing that it contains merger and limitation of representation clauses that preclude Lynn's claims and that Lynn fails to contend that any representation or warranty in the Agreement was false or misleading. Motion at 2, 9–12.[1] Defendants also assert that Lynn's claims should be dismissed because (1) he failed to assert an actionable misstatement of material fact that was known to be false when made, (2) the financial status of Slang was open and available to Lynn when the Agreement was executed, and (3) Lynn fails to plead justifiable reliance. Motion at 12–17. Lynn responds that he was fraudulently induced to enter the Agreement. He contends that he is not relying on the Agreement for his claims; he is relying on the representations Defendants made before the Agreement was executed to support both his fraudulent and negligent misrepresentation claims. Opposition at 6–8.

### 1. Merger and "No Representations" Clauses

The Agreement contains both a merger clause and a "no other representations" clause. The merger clause is as follows:

> **10.2 Entire Agreement.** This Agreement, together with the Letters of Transmittal, constitutes the full, entire and integrated agreement between the parties hereto with respect to the subject matter hereof, and supersede all prior negotiations, correspondence, understandings and agreements among the parties hereto respecting the subject matter hereof.

---

[1] Defendants ask the court to take judicial notice of three documents they submitted with their motion as Exhibits 1–3 that they describe as "publicly available regulatory filings." Motion at 3–4, 13–16. Two of the documents appear to be financial statements of Slang, and the third is titled "Slang Worldwide Inc. Management's Discussion and Analysis." Unlike the Agreement, Lynn does not refer to any of these documents in the complaint, and nothing about the exhibits suggests that any of them was publicly available, filed with any regulatory agency, or that they are complete documents that should, or even could, be judicially noticed.

The Agreement also contains the following clause:

> **4.10   No Other Representations.**  Except as provided in this Article 4 and in Article 5, neither [Slang] or [Slang Vermont] nor any of its or their Affiliates, nor any of their respective directors, officers, employees, stockholders, partners, members, managers or representatives has made, or is making, any representation or warranty whatsoever to [High Fidelity], any Shareholder or their Affiliates, or its or their directors, officers, employees, stockholders, partners, members, managers or representatives.

Merger clauses are "designed to avoid the confusion created when parties may have several agreements or contracts between them prior to completing a written agreement." Hoeker v. Dep't of Soc. and Rehab. Servs., 171 Vt. 620, 621 (2000) (mem.). They verify that the parties have adopted the contract "'as a complete and exclusive statement of the terms of the agreement.'" Id. (quoting Restatement (Second) of Contracts § 210 (1981)) (emphasis omitted).  The written agreement "becomes the exclusive medium for determining the understanding of the parties, and prior agreements covering the same subject matter are unenforceable." Id. at 621–22 (citing Dartmouth Sav. Bank v. F.O.S. Assocs., 145 Vt. 62, 69 (1984)); *accord* Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 113, 208 Vt. 578.  A merger clause "'negates the impact of earlier negotiations and contract drafts, and states that the written contract is the complete extension of the parties' agreement.'" Kneebinding, Inc., 2018 VT 101, ¶ 114 (quoting Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 10 (1st Cir. 2004)).  Although merger clauses often contain "no representation" provisions, here they are separate. The merger clause here is not directly relevant, as the issue is not prior drafts, or prior agreements, but alleged prior representations made by Defendants.

"No representation" clauses *can* bar reliance on things said prior to the contract. However, general statements that no representations have been made are not enough to

bar fraudulent inducement claims. "[E]ven when the contract contains an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made, a party may escape liability under the contract by establishing that he was induced to enter the contract by fraud." Manufacturers Hanover Tr. Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993) (quotation omitted). To be effective, such a clause must use "clear and unequivocal language." Italian Cowboy Partners Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 331 (Tex. 2011); *see also* Shakeri v. ADT Sec. Servs., Inc., 816 F.3d 283, 296 (5th Cir. 2016) ("[A] disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim," but "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement.") (internal quotations and citation omitted); President Container Group II, LLC v. Systec Corp., 467 F.Supp.3d 158, 168 (S.D.N.Y. 2020) (statement in contract that no representations have been made does not bar claim of fraudulent inducement unless contract disclaims specific representations); *cf.* 116 Waverly Place LLC v. Spruce 116 Waverly LLC, 119 N.Y.S.3d 78, 79 (2020) (plaintiff's fraud claims dismissed where contract contained express disclaimer stating seller made no representations or warranties about building's condition and plaintiff agreed to accept building "as is").

The "no other representations" clause in this case is not specific enough to bar Lynn's misrepresentation claims. It does not say, for example, that Lynn is not relying upon any statements as to Defendants' financial condition. Neither the merger clause nor the "no other representations" clause bars Lynn's claims.

## 2. Fraudulent Misrepresentation

A claim of fraudulent misrepresentation requires Lynn to prove, by clear and convincing evidence, that Defendants made an "'intentional misrepresentation of existing fact, affecting the essence of the transaction when the misrepresentation was false when made and known to be false to the maker, [that] was not open to [Lynn]'s knowledge, and was relied on by [Lynn] to [his] damage.'" Pettersen v. Monaghan Safar Ducham PLLC, 2021 VT 16, ¶ 20, 214 Vt. 269 (quoting Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 141, 208 Vt. 578). "Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts." Estate of Alden v. Dee, 2011 VT 64, ¶ 32, 190 Vt. 401 (citing Sutfin v. Southworth, 149 Vt. 67, 69–70 (1987)).

The complaint alleges that "Miller and Driessen communicated to Mr. Lynn that [Slang] was financially sound" and "had a bright economic future," and they "promised that [Slang] would support an $18 million dollar investment into [High Fidelity] to financially support Mr. Lynn's growth plans." Complaint ¶ 17. Lynn further alleges that Driessen and Miller knew but "never disclosed that [Slang] was teetering on the edge of insolvency" and that Slang "was losing money at a rate that would cause it to soon fail while [the parties] discussed the Merger Agreement." Id. ¶ 24. Lynn asserts he was "provided with access to publicly available documents that did not reflect that the company was about to fail" and that "[t]he financial data made available to [him] was materially misleading." Id. ¶ 25. He alleges that he "relied to his detriment on the material and intentional misrepresentations in deciding to agree to the Merger Agreement." Id. ¶ 34.

Defendants contend that the statements Lynn relies on are not actionable because they constitute mere "puffery." Motion at 12. "Statements of quantity, quality and value are usually held to be expressions of opinion and therefore not actionable.'" Howard Opera House Assocs. v. Urban Outfitters, Inc., 166 F.Supp.2d 917, 926 (D. Vt. 2001) (quoting Batchelder v. Birchard Motors, Inc., 120 Vt. 429, 433 (1958)); *accord* Pettersen, 2021 VT 16, ¶ 20, 214 Vt. 269 (statements of fact may be basis for fraud claim, but statements of opinion generally may not). Whether a particular statement is one of fact or opinion is usually a jury question, but a court can decide this as a matter of law if the statement "is 'so plainly of the one class or the other[.]'" Howard Opera House, 166 F.Supp.2d at 926 (quoting Batchelder, 120 Vt. at 433).

In Heath v. Palmer, 2006 VT 125, ¶ 14, 181 Vt. 545, our Supreme Court dismissed a fraud claim, holding that the defendant's representations of "quality construction" and "exceptional value" made in connection with construction of a new house were "subjective evaluations of workmanship rather than objectively verifiable statements of fact." Courts in other jurisdictions have concluded that representations that a company has a "bright future" or is "financially sound" constitute puffery and are unable to support a claim of fraud. *See, e.g.*, Biocad JSC v. F. Hoffmann-La Roche Ltd., No. 16-cv-4226 (RJS), 2022 WL 268102, at *6 (S.D.N.Y. Jan. 28, 2022) (representation that company had a "bright future" is puffery); Howard v. Arconic Inc., 395 F.Supp.3d 516, 558 (W.D. Pa. 2019) (statements that company's products are "highly valuable," "state-of-the-art," or part of company's "bright future" are aspirational statements of optimism and do not support claim of fraud); In re Yahoo! Inc. Sec. Litig., No. C 11-02732 CRB, 2012 WL 3282819, at *18 (Aug. 10, 2012), aff'd, 611 F. App'x 387 (9th Cir. 2015) (representations of "great investment" and "bright future" are "mere puffery" and not

actionable as false and misleading); <u>Buckman v. Calyon Secs. (USA) Inc.</u>, 817 F.Supp.2d 322, 339 (S.D.N.Y. 2011) (statements that business was "financially sound, had a balanced trading book, and had sound risk management processes" constitute puffery and are insufficient to induce reasonable reliance as a matter of law).

In contrast, a defendant's specific misrepresentation of net income, the dollar value of current assets, or the value of property and equipment may support a claim of fraud. *See* <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172 (2d Cir. 1994); *see also* <u>Pennington v. Singleton</u>, 606 S.W.2d 682, 687 (Tex. 1980) (statement that boat is "new" or is in "perfect" condition is actionable as fraudulent when boat being sold has cracked gear housing). No such specific misrepresentation is alleged here.

The other statement Lynn asserts he relied on is that Slang would support an investment of $18 million into High Fidelity. However, "'mere promises to act in the future cannot constitute the requisite misrepresentation of existing fact that is essential to fraud'" unless there is no present intention to act contrary to the promise. <u>Pettersen</u>, 2021 VT 16, ¶ 20 (quoting <u>Union Bank v. Jones</u>, 138 Vt. 115, 121 (1980)). In <u>Pettersen</u>, the Court held that the defendant's promise to make the plaintiff a partner in five years and pay him a $100,000 salary was insufficient to prove fraud because, inter alia, there was no evidence that the defendant had the intention, when the promise was made, not to follow through with it. <u>Id</u>. ¶ 22. Lynn does not allege that Defendants had no intention of following through on this promise when it was made. Therefore, it cannot support a claim for fraudulent misrepresentation.

Lynn also argues that Defendants were engaged in a scheme to defraud him and that their promise of a future investment was made as a part of this scheme. Opposition at 4. Lynn is correct that a future promise may be fraudulent when it is part of a general

scheme or plan to defraud, but the promise must be a step "in a series of actions constituting the scheme." Fayette v. Ford Motor Credit Co., 129 Vt. 505, 510 (1971). In Fayette, the plaintiff based his fraud claim on two promises of material fact by the defendant, one as to the present and one as to the future, which the Court concluded could support a scheme to defraud. Id. at 513–14; *see also* Proctor Trust Co. v. Upper Valley Press, Inc., 137 Vt. 346, 351 (1979) (scheme to defraud involved projections based on unreliable data, which court found "resemble[d] misrepresentations of existing fact"). Contrary to the scenarios in Fayette and Proctor Trust, which involved at least one misrepresentation of existing material fact, Lynn's claim of a scheme is based entirely on statements of opinion, or puffery, and a promise to invest money at some undetermined time in the future. These alleged misrepresentations are insufficient, as a matter of law, to support a claim of fraud.

In his complaint, Lynn asserts that Defendants knew but "never disclosed that [Slang] was teetering on the edge of insolvency" and that Slang "was losing money at a rate that would cause it to soon fail while [the parties] discussed the Merger Agreement." Complaint ¶ 24. Concealing facts that a party has a duty to disclose can be enough to prove fraudulent misrepresentation. Estate of Alden, 2011 VT 64, ¶ 32. However, the complaint fails to allege that Defendants owed Lynn any legal duty to disclose the alleged facts.

Moreover, the complaint fails to assert that information regarding Slang's financial status was unavailable to Lynn. *See* Pettersen, 2021 VT 16, ¶ 20 (to prevail on fraud claim, plaintiff must show he could not have discovered truth about fact misrepresented); Howard Opera House, 166 F.Supp.2d at 926 (same). He asserts that the information Defendants provided him did not disclose these facts, but fails to allege

that he could not have determined for himself Slang's true financial condition. Because of these deficiencies, Lynn may not rely on Defendants' alleged concealment of this information to support his claim for fraud.

### 3. Negligent Misrepresentation

Lynn's negligent misrepresentation claim is based on the allegedly misleading nature of the financial documents Defendants showed him and Defendants' failure to disclose information to him regarding Slang's true financial condition. Lynn asserts that Defendants knew or should have known that Slang was close to insolvency when the parties were negotiating the Agreement and that they knew or should have known that the financial documents they provided him did not accurately reflect Slang's financial status. Complaint ¶ 37–38. Lynn asserts he was misled into believing Slang was financially sound when it was not and that he relied on Defendants' misrepresentations to his detriment in deciding to agree to merge his company with Slang. Id. ¶ 39.

Vermont has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts § 552(1), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See* Howard v. Usiak, 172 Vt. 227, 230–31 (2001) (quoting Restatement (Second) of Torts § 552(1)); McGee v. Vt. Fed. Bank, 169 Vt. 529, 530 (1999) (mem.). Whether a defendant exercised reasonable care or competence depends on the circumstances and is generally a question for the factfinder. Howard, 172 Vt. at 231. However, as with any other claim for negligence, negligent misrepresentation requires the violation of a duty

of care. *See, e.g.*, Webb v. Leclair, 2007 VT 65, ¶ 20, 182 Vt. 559 ("Defendant owed no duty to plaintiff on which plaintiff could rest a negligence or negligent misrepresentation claim."). In addition, a plaintiff must show that he was justified in relying on the representation and that he was not able to verify its truth or falsity. Id. at 531; Burgess v. Lamoille Hous. P'ship, 2016 VT 31, ¶ 22, 201 Vt. 450; McGee, 169 Vt. at 531.

Lynn fails to allege that Defendants owed him a duty to disclose Slang's financial situation, or that he was unable to verify that information for himself. He has therefore failed to state a claim for negligent misrepresentation.

### Conclusion

Defendants' motion to dismiss the complaint is granted.[2]

Electronically signed on March 7, 2024 pursuant to V.R.E.F. 9(d).

Helen M. Toor
Superior Court Judge

---

[2] Lynn includes a third count in his complaint, for punitive damages. That claim falls with the substantive claims.